**MacDRAW, INC., Plaintiff–Appellant,**

**Klayman & Associates, P.C. and Larry Klayman, Esq., Appellants,**

v.

**The CIT GROUP EQUIPMENT FINANCING, INC. and Richard Johnston, Defendants–Appellees.**

No. 305, Docket 95–7021.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1995.

Decided Jan. 3, 1996.

Larry Klayman, Klayman & Associates, Washington, D.C., for plaintiff-appellant and appellants.

Jeffrey H. Weinberger, New York City (Susan G. Rosenthal, Frederick M. Klein, Winick & Rich, on the brief), for defendants-appellees.

Before: NEWMAN, Chief Judge, CARDAMONE and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

MacDraw, Inc. and its counsel appeal from four orders of the United States District Court for the Southern District of New York (Shirley Wohl Kram, *Judge* ), imposing sanctions of $25,186.67 pursuant to FED.R.CIV.P. 11 and 28 U.S.C. § 1927 (1988). The court held that plaintiff had no cognizable basis to move for partial summary judgment with respect to three counts of its complaint, that plaintiff's claim to more than $270,000 in damages was not well-grounded in fact or law, and that plaintiff's claim to recovery for work performed during a certain time period was without merit. We conclude that the award of sanctions was not proper on the bases proffered by the district court. We therefore vacate the award.

## I. BACKGROUND

### A. *Facts*

For purposes of this appeal, the following facts are not in dispute. Plaintiff MacDraw is an importer and distributor of wire-drawing equipment. In July 1989, nonparty Laribee Wire Manufacturing Company, Inc. ("Laribee") ordered certain industrial equipment from MacDraw for a total purchase price of $7,118,628, to be paid in installments. Laribee approached defendant The CIT Group Equipment Financing, Inc. ("CIT") to finance the purchase. Under a Loan and Security Agreement between Laribee and CIT, dated as of July 2, 1990, CIT agreed to provide a series of interim loans upon which Laribee could draw to meet its payment schedule. CIT received and perfected a security interest in the equipment. The financing agreement required that, prior to each disbursement, Laribee attest to its solvency and creditworthiness and continue to make payments on previous disbursements. In addition, CIT required that Laribee and Mac-Draw execute a Vendor's Consent and Agreement ("Vendor's Consent"), under which Laribee permitted CIT to disburse funds directly to MacDraw. The Vendor's Consent Agreement contained the following clause:

> [Laribee] shall in all events remain obligated to [MacDraw] under the Purchase Agreement, and CIT *assumes no obligations thereunder*, it being a successor to [Laribee's] rights *but not [its] obligations*.

Vendor's Consent at 2 (emphasis supplied).

MacDraw had shipped the equipment to Laribee by July 30, 1990. Installation of the equipment and payment to MacDraw proceeded as expected over the course of several months. By September 1990, as required by the terms of Laribee's purchase orders, Mac-Draw had received payment for ninety percent of the cost of the equipment. On November 16, 1990, a Laribee officer notified CIT that Laribee had accepted the machinery delivered and installed by MacDraw and authorized CIT to transfer the final ten percent balance to MacDraw. Before releasing the final balance, however, CIT discovered that Laribee had failed to keep current on a revolving line of credit with one of its banks and had failed to make certain debt-service payments to CIT. Each event constituted a separate event of default under Laribee's financing agreement with CIT; as a result, CIT refused to release the final payment to MacDraw. On November 28, 1990, Mac-Draw vice president Massimo Colella notified Laribee in writing that he had learned from CIT that Laribee had not complied with the terms of its financing agreement. On December 12, 1990, Laribee acknowledged that it had not and could not comply with the financing agreement. On January 22, 1991, CIT informed MacDraw that it would not pay the final ten percent installment. Laribee filed for bankruptcy on February 7, 1991. CIT foreclosed on its perfected security interest in the machinery and sold it to a third party in November 1991.

### B. *District Court Proceedings*

MacDraw commenced this action against CIT in August 1991, seeking, *inter alia*, the $711,862.80 final installment payment owed

to it. MacDraw's various theories of liability shared a common factual predicate: that a CIT employee, defendant Richard Johnston, had assured Colella orally on October 11, 1990, and in writing the following day that CIT would proceed with payment of the final ten percent as soon as it received assurances from Laribee that the equipment had been fully installed and accepted. MacDraw alleged that (1) Johnston and CIT engaged in common-law fraud by misrepresenting CIT's intent to make the final payment, thereby inducing MacDraw to rely upon that misrepresentation by expending additional sums to "fine-tune" the equipment (Count 1); (2) MacDraw was an intended third-party beneficiary of an agreement between Laribee and CIT (Count 2); (3) the doctrines of promissory estoppel and unjust enrichment precluded CIT from withholding payment to MacDraw (Count 3); (4) CIT had breached a unilateral contract with MacDraw by virtue of its failure to remit the final payment upon MacDraw's completion of the installation (Count 4); and (5) CIT had breached a contract implied-in-fact between MacDraw and CIT based on their course of dealing (Count 5). Under each count, MacDraw also sought more than $270,000 in damages for so-called "enhancement" costs—additional labor and equipment costs incurred as MacDraw continued to fine-tune the equipment, allegedly in reliance upon CIT's promise to remit the final payment.

■ On November 13, 1991, claiming that CIT's security interest in the equipment should be deemed subordinate to MacDraw's "equitable interest," MacDraw filed an emergency motion seeking to compel CIT to deposit into the court registry the proceeds of its sale of the equipment to a third party.[1] At an evidentiary hearing on this motion the following day, plaintiff's counsel announced his intention to move for summary judgment. The district court advised him not to, indicat-

ing that "I think it is a waste of time." In December 1991, plaintiff's counsel filed a notice of intent to seek summary judgment and submitted a "courtesy copy" of its summary judgment motion to the district court and opposing counsel. At a pre-motion conference held pursuant to the district court's individual rules on February 21, 1992, the district court stated:

> I would try to ... discourage you from making the [summary judgment] motion because I think you leave yourself open to a Rule 11 sanction, but if I can't dissuade you, fine, we will go ahead with it. . . .
>
> . . . .
>
> You have the right to make your motion if you want to. I have advised you that I think there are these problems with the motion. I think you leave yourself open to a Rule 11 sanction. If you want to make it, okay.[2]

Plaintiff proceeded to move for partial summary judgment on Counts 2 through 5 of its complaint a week later. The defendants cross-moved for summary judgment, dismissal of the complaint, and sanctions for MacDraw's "frivolous" motion practice.

Nearly two years later, by a Memorandum Opinion and Order of January 17, 1994, the district court denied plaintiff's motion for partial summary judgment in its entirety and granted defendants' cross-motion on three of the five counts, leaving MacDraw's fraud and promissory estoppel claims for trial. The district court also granted defendants' motion for sanctions, proffering three bases for doing so. First, the court concluded that MacDraw had no cognizable basis for moving for summary judgment on three of its five counts. The court explained that MacDraw could not possibly have obtained summary judgment on any theory involving Johnston's alleged oral representation, inasmuch as the

---

1. MacDraw's motion appears to have been abandoned.

2. We have previously emphasized that a district court "has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure." *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987). "Although it is

within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion, the judge may not require that the court's permission be secured at such a conference before a party may file the motion." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 39 (2d Cir.1995).

defendants had denied in their answer that any oral representation had taken place, thereby setting up a material issue of fact in dispute precluding summary judgment. Second, the court found that MacDraw's claim for damages arising from certain "enhancements" to the equipment lacked any factual and legal basis. Third, the court concluded that MacDraw's claim for work performed prior to the October 11, 1990, oral promise and after MacDraw's November 28, 1990, discovery that Laribee had failed to comply with the terms of its financing agreement with CIT was meritless.

The court withheld judgment on the amount of the sanctions, pending receipt of an affidavit from defendants setting forth their legal fees and costs in defending Mac-Draw's motion for partial summary judgment. On November 2, 1994, the court ordered that MacDraw pay the defendants $25,186.67 in attorney's fees. In response to a motion for reconsideration, the court reaffirmed its November 2 order on December 9, 1994. After a letter from defendants' counsel, the court issued an order on December 27, 1994, clarifying the award of sanctions as follows: "It is hereby ordered that plaintiff's counsel comply with this Court's ... orders by paying a sanction in the amount of $25,-186.67 to [CIT] on or before January 4, 1995." This appeal followed.

## II. DISCUSSION

■ The district court awarded sanctions pursuant to FED.R.CIV.P. 11 and 28 U.S.C. § 1927. We review all aspects of a district court's award of sanctions under either provision for abuse of discretion. *See, e.g., Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990) (Rule 11); *Sussman v. Bank of Israel*, 56 F.3d 450, 456 (2d Cir.) (Rule 11), *cert. denied sub nom. Bank of Israel v. Lewin*, —— U.S. ——, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995); *Knipe v. Skinner*, 19 F.3d 72, 75 (2d Cir.1994) (Rule 11); *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 23 (2d Cir.1990) (§ 1927); *Apex Oil Co. v. Belcher Co.*, 855 F.2d 1009, 1020 (2d Cir.1988) (§ 1927). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405, 110 S.Ct. at 2460. Under this standard of review, we find that the imposition of sanctions on the grounds proffered by the district court constituted an abuse of discretion. We consider the sanction provisions in turn.

### A. *Rule 11*

■ Rule 11 was substantially revised during the pendency of this litigation. By order of the Supreme Court, the 1993 amendments to the Federal Rules of Civil Procedure, including the revisions to Rule 11, took effect on December 1, 1993, governing civil proceedings commenced after that date and, "insofar as just and practicable, all proceedings in civil cases then pending." 146 F.R.D. 404 (1993). Because the allegedly sanctionable conduct in this case occurred prior to the effective date of the 1993 amendments, the district court was required to apply the standard of conduct set forth in the pre–1993 Rule. *See Knipe*, 19 F.3d at 78 ("Any further retroactive application of the amended Rule 11 would charge [counsel] with knowledge of a rule not in effect at the time of filing and therefore would not advance Rule 11's central goal of deterring baseless filings."). Prior to December 1, 1993, Rule 11 provided that a signature on a "pleading, motion, or other paper" constitutes

certificat[ion] ... that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

FED.R.CIV.P. 11 (1992). In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness, examining whether, under the circumstances of a given case, the signer has conducted a "reasonable inquiry" into the basis of a filing. *See Business Guides, Inc. v. Chromatic Communications*

*Enters., Inc.,* 498 U.S. 533, 548, 111 S.Ct. 922, 931, 112 L.Ed.2d 1140 (1991); *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991); Fed.R.Civ.P. 11 Advisory Committee Notes (1983 Amendment).

Under the pre–1993 Rule, the imposition of sanctions was mandatory upon finding a violation of the Rule; under the amended Rule, the imposition of sanctions is discretionary. We have held that a "just and practicable" application of the amended Rule in cases pending on December 1, 1993, would permit a district court to exercise its discretion in imposing sanctions, while adhering to the substantive standard of the pre–1993 Rule. *See Knipe,* 19 F.3d at 78.

■ The district court did not identify which version of Rule 11 it applied in this case. We will assume that the district court properly applied the substantive standard of the pre–1993 Rule and will evaluate its analysis accordingly. We note, however, the existence of certain procedural irregularities. First, the district court's order of November 2, 1994, reaffirmed on December 9, 1994, purported to levy sanctions against *Mac-Draw* only, not MacDraw's *counsel.* Under the pre–1993 version of the Rule, liability runs to the signer of a pleading, motion, or paper submitted in violation of the Rule; a party that signs a filing is held to the same standard of objective reasonableness as an attorney. *See Business Guides,* 498 U.S. at 554, 111 S.Ct. at 934. MacDraw did not sign the filings that triggered the district court's imposition of Rule 11 sanctions in this case. The question, then, is in what circumstances MacDraw could nonetheless be subject to Rule 11 sanctions. Prior to the Supreme Court's decision in *Business Guides,* the rule in this Circuit was that a represented party was subject to Rule 11 sanctions only upon a showing of subjective bad faith. *See, e.g., Cross & Cross Properties, Ltd. v. Everett*

*Allied Co.,* 886 F.2d 497, 505 (2d Cir.1989); *Greenberg v. Hilton Int'l Co.,* 870 F.2d 926, 934, 939 (2d Cir.), *vacated and remanded on other grounds on reh'g,* 875 F.2d 39 (2d Cir.1989); *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1474–75 (2d Cir.1988), *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). While *Business Guides* made clear that a standard of objective reasonableness applies to parties who *sign* pleadings, motions, or other papers, 498 U.S. at 554, 111 S.Ct. at 934, it left open the question of whether a subjective or objective standard applies to non-signing parties, *id.* Following decisions of this Circuit prior to *Business Guides,* we conclude that a showing of subjective bad faith would be required for liability to run to MacDraw under the pre–1993 version of Rule 11. The district court made no finding of bad faith with respect to MacDraw, and sanctions against MacDraw would therefore have been improper.[3] In its clarifying order of December 27, 1994, the district court ordered plaintiff's counsel to comply with its prior orders and pay the required sanctions by January 4, 1995. We construe this order as controlling.[4]

■ Second, we note that under the pre–1993 version of Rule 11, sanctions are imposed upon the individual attorney who signs the paper that triggers the sanctions. *See Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 124, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989). The relevant papers in this case—plaintiff's summary judgment motion and memoranda in support thereof—were signed by Frederick J. Sujat and Larry Klayman, both of the firm Klayman & Associates. Sujat has not filed a notice of appeal in this case. The district court did not specifically identify any attorney in imposing the sanctions; presumably, liability would run to

---

**3.** Nor would sanctions under 28 U.S.C. § 1927 have been appropriate against MacDraw. That provision on its face applies only to counsel. *See infra* p. 1262; *see also International Bhd. of Teamsters,* 948 F.2d at 1345.

**4.** Indeed, it is the order against plaintiff's counsel that provides the basis for our appellate juris-

diction in this case. *See, e.g., Sanko S.S. Co. v. Galin,* 835 F.2d 51, 53 (2d Cir.1987) (Rule 11 sanction against attorney is a reviewable collateral order, as a conclusive determination separate from the merits, effectively unreviewable on appeal).

both attorneys.[5] Appellees do not, however, argue that a relevant party is not properly before this court.[6] We therefore turn to the merits.

■■■ We have noted that Rule 11 sanctions must be imposed with caution. *See, e.g., Knipe,* 19 F.3d at 78. We have therefore required that a district court articulate with specificity the sanctionable conduct and the reasons supporting the sanctions. *See, e.g., International Bhd. of Teamsters,* 948 F.2d at 1346–47; *Sanko S.S. Co. v. Galin,* 835 F.2d 51, 53 (2d Cir.1987); *Oliveri v. Thompson,* 803 F.2d 1265, 1281 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Because we find that none of the three bases identified by the district court support the imposition of sanctions under Rule 11, we vacate the award. We examine each basis in turn.

### 1. Denial of Oral Representations

The district court first concluded that MacDraw "had no cognizable basis to make its motion for partial summary judgment with respect to Counts Three, Four and Five of the Complaint." Memorandum Opinion and Order at 44, *MacDraw v. CIT Group Equipment Financing, Inc.,* No. 91 Civ. 5153 (SWK), 1994 WL 17952 (dated Jan. 17, 1994). It reasoned as follows:

> The crucial issue with respect to each of these counts, alleging promissory estoppel and breach of contract, are a series of alleged *oral* communications between Colella and Johnston. *In its answer, however, CIT denied that such oral representations were made.* Thus, before MacDraw's motion was even brought, an issue of fact existed as to whether Johnston had orally

promised anything. As a result, MacDraw could not possibly have obtained summary judgment on any purported oral promise theory.

*Id.* at 44–45, 1994 WL 17952 (second emphasis supplied). Accordingly, the district court found that MacDraw's motion for partial summary judgment was premised upon Johnston's alleged representation that the only condition to CIT's final payment was MacDraw's completion of the installation. Because defendants' answer denied such a representation, thereby purportedly foreclosing the possibility of summary judgment, the district court found MacDraw's motion sanctionable.

■■■ We conclude that the district court erred as a matter of law in sanctioning plaintiff's counsel on the basis of a denial in defendants' answer. A denial in an answer is not sufficient to raise a genuine issue of fact. FED.R.CIV.P. 56(e) plainly states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*See, e.g., Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). The denial in defendants' answer is simply not enough to render MacDraw's summary judgment motion sanctionable.

Defendants attempt to defend the district court's award of sanctions on this ground by arguing that (1) the Vendor's Consent executed by Laribee and MacDraw indicated

**5.** The new Rule 11 gives the district court greater flexibility as to whom it may target with sanctions. *See* FED.R.CIV.P. 11(c) (1995) (authorizing imposition of sanctions upon "the attorneys, law firms, or parties" responsible for violation of Rule). Our disposition of the case renders it unnecessary to decide whether the district court could properly have applied the substantive standards of pre–1993 Rule 11 but followed the contours of the post–1993 Rule in deciding whom to sanction.

**6.** Along the same lines, we note that the law firm of Klayman & Associates has filed a notice of appeal in this case. Prior to December 1, 1993, Rule 11 sanctions could not properly have been imposed upon the firm. *See Pavelic & LeFlore,* 493 U.S. at 126–27, 110 S.Ct. at 459–60. It is unclear whether the district court in fact intended to sanction the firm. It is unnecessary for us to consider whether Rule 11 sanctions against the firm would have been "just and practicable" or an improper retroactive application of the new Rule 11, because we find the sanctions inappropriate on the merits.

**1260**

that CIT was assuming only Laribee's *rights*—thus putting MacDraw on notice that there existed a disputed issue of fact regarding the oral promise; and (2) Johnston had repeatedly and categorically denied making any oral promise that MacDraw's completion of the installation would trigger CIT's payment of the final ten percent upon MacDraw's completion of the installation. We find these arguments unpersuasive.

The fact that the Vendor's Consent itself created no payment obligation for CIT in the circumstances posited by MacDraw would not have precluded CIT from making a *subsequent* oral promise to remit the final payment to MacDraw; the mere existence of the Vendor's Consent therefore would not have alerted MacDraw to a genuine issue of fact precluding summary judgment. A clear denial of the October 11, 1990 promise, made prior to MacDraw's motion, might have created a genuine issue of fact precluding summary judgment. *See Greenberg*, 870 F.2d at 936 ("Under Rule 11, the conduct of a signer is judged as of the time the paper is signed...."). Defendants, however, point to sworn affidavits submitted after the motion was filed.

It is true that certain statements in Johnston's deposition—taken before MacDraw's motion for summary judgment was filed—could be construed as contradicting MacDraw's interpretation of Johnston's oral communication of October 11: "I am sure that I told them there were other [conditions to CIT's release of the final payment]. I did not explain what issues there were, what conditions precedent [there] were, because they ... had nothing to do with MacDraw." Even if this testimony could constitute a clear denial of the alleged oral representation, it was not identified by the district court as the basis for sanctions in this case. Because we require a district court to identify specific sanctionable conduct, we decline to rely upon this deposition testimony or other aspects of the record not specifically relied on by the district court as alternative grounds for affirmance.

### 2. *Claim to Enhancements*

■ The district court also indicated that it was "deeply troubled by MacDraw's claims

regarding entitlement to ... $270,523 in Enhancements." The court noted that, according to Colella's deposition, "CIT had never requested or agreed to pay for [the enhancements]." Memorandum Opinion and Order at 45. The fact that CIT had not agreed to finance the enhancements thus provided the basis for the district court's conclusion that "plaintiff's counsel engaged in little or no preliminary factual and legal investigation" before moving for summary judgment on its claims for enhancements.

We find that the district court's reasoning was based upon a clearly erroneous interpretation of MacDraw's claim for the cost of the enhancements. MacDraw never alleged that CIT had financed the enhancements or agreed to pay for them; rather, MacDraw claimed to have expended additional sums of money to "fine-tune" the equipment in reliance upon CIT's promise to pay the final balance. As a result, MacDraw sought to recover sums that it claims it would not have expended but for CIT's alleged promise to pay.

We do not mean to suggest that MacDraw's claim to these sums is without problems. It is, in fact, troubling. In particular, a number of the invoices supplied by MacDraw in support of its claim to enhancements appear to reflect charges for labor performed or items shipped before the alleged October 11 promise. It could therefore be said that MacDraw's claims to such enhancements— which are purportedly based on MacDraw's reliance on the alleged October 11 promise— lacked a factual foundation.

The district court did not, however, sanction MacDraw's counsel on this basis. Rather, it noted that CIT had neither requested nor agreed to pay for the enhancements. For purposes of evaluating MacDraw's claim to have acted in reliance on CIT's promise, this observation is wholly irrelevant. Again, because the specific grounds proffered by the district court do not support the imposition of sanctions, we find the sanctions improper.

### 3. *Claim to Work Performed Prior to October 11 and After November 28*

■ The court also indicated that it was "troubled" by MacDraw's claims regarding

entitlement to payment for work performed prior to the alleged October 11 promise and after the November 28 notification that CIT would not release the final payment until Laribee complied with the conditions of its financing agreement. In explaining this basis for sanctions, the court reasoned that "MacDraw's claim that it detrimentally relied upon CIT's October 11th Promise *in shipping the Equipment,* two months before this representation was made, is clearly without merit." Memorandum Opinion and Order at 45 (emphasis supplied). Again, we find the district court's conclusion to be based on a clearly erroneous interpretation of MacDraw's claim.

MacDraw never contended that it relied upon Johnston's alleged October 11 promise in *shipping the equipment;* rather, it claimed to have relied upon the promise in continuing to install and fine-tune the equipment. MacDraw admitted that the equipment had been shipped by July 30, 1990.

It may be that the district court *intended* to refer here to MacDraw's claim to "enhancements," some of which, as noted, appear to reflect charges for labor performed and parts shipped prior to October 11. The district court did not, however, refer to enhancements; it referred to equipment. It is clear from other portions of its opinion that the district court appreciated the distinction: it used the term "equipment" to refer to the original machinery delivered by July 30 and the term "enhancements" to refer to the various accessories and spare parts that MacDraw contends it supplied in reliance upon the October 11 promise. We could not base our affirmance of sanctions on the assumption that the court did not mean what it said.

 The district court offered no amplification of its statement that it was "troubled" by MacDraw's claim to charges for work performed after the November 28, 1990, notification that CIT would not release the final installment until Laribee complied with the conditions of its financing agreement. We note that the November 28 notification did not necessarily represent an unequivocal retraction of any alleged promise to pay the final installment. Indeed, Laribee did not

certify until December 12 that it had not and could not comply with the terms of its agreement with CIT. MacDraw claims not to have been fully aware that Laribee would not meet its obligations until January 22, 1991. In our view, the November 28 notification did not necessarily inform MacDraw that it would ultimately not be paid its final balance. An imposition of sanctions based on MacDraw's claim to post–November 28 work would require additional findings as to whether it was reasonable for MacDraw to continue to rely on CIT's alleged promise to pay beyond November 28th and as to whether the portion of enhancement costs incurred after such reliance became unreasonable was at all significant.

In sum, we conclude that the award of sanctions under Rule 11 was not proper on any of the bases proffered by the district court.

B. *Section 1927*

 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

By its terms, § 1927 looks to unreasonable and vexatious multiplication of proceedings; it imposes an obligation upon attorneys throughout the entire litigation to avoid dilatory tactics. We have held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri,* 803 F.2d at 1273. An award of sanctions pursuant to § 1927 must be accompanied by a finding of bad faith. *See, e.g., Keller v. Mobil Corp.,* 55 F.3d 94, 99 (2d Cir.1995); *International Bhd. of Teamsters,* 948 F.2d at 1345; *Oliveri,* 803 F.2d at 1273.

As is clear from the text of § 1927 and our cases interpreting it, significant differences exist between the pre–1993 version of Rule

11 and § 1927. While Rule 11 sanctions could in some circumstances be imposed on the client as well as its counsel, § 1927 on its face applies only to counsel. Section 1927 violations do not depend upon the submission of a "pleading, motion, or other paper." The pre–1993 version of Rule 11 requires a showing of objective unreasonableness on the part of the signer of the relevant filing; § 1927 requires subjective bad faith of counsel.

■ We have previously cautioned district courts to engage in "separate consideration of the available sanctions machinery" before imposing sanctions under multiple provisions. *International Bhd. of Teamsters,* 948 F.2d at 1346. Thus, we have held that " 'sanctions under Rule 11 must be *treated and determined separately* from those that may be imposed under § 1927. The resulting findings must appear with reasonable specificity in terms of the perceived misconduct and the sanctioning authority.' " *Id.* (quoting *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1359 (3d Cir.1990)) (emphasis supplied).

The district court engaged in no detailed consideration of what conduct by plaintiff's counsel satisfied the bad faith requirement of § 1927; indeed, the district court appeared to have been of the view that no showing of bad faith was necessary under § 1927. After identifying the three bases for sanctions discussed above, the district court concluded that *"Rule 11* sanctions are appropriate here"; nonetheless, in the final section of its opinion and in one of its subsequent orders, the court purported to identify § 1927 as a sanctioning authority as well. Because the district court made no findings of bad faith, and because the proffered bases for imposing sanctions were inadequate in any event, we must vacate the award under § 1927 as well.

### III. Conclusion

Our discussion should not be taken to suggest that we find the conduct of plaintiff's counsel throughout this litigation to be acceptable. Indeed, we note our sympathy with the district court's frustration; in pursuing this appeal, plaintiff's counsel submitted briefs that included inaccurate characterizations of the record and comments that we consider entirely inappropriate. There is no question that our rules permit sanctions where an attorney's conduct degrades the legal profession and disserves justice. In the face of significant abuse, a district court need not hesitate to impose penalties for unreasonable conduct and acts of bad faith. Nevertheless, it must do so with care, specificity, and attention to the sources of its power. Because the district court did not identify specific instances of properly sanctionable conduct in this case, its award of sanctions cannot stand.

We therefore vacate the award of sanctions.