Scott **GREGES**, Plaintiff,

v.

**CITY OF WHITE PLAINS**, Defendant.

**City of White Plains, Third–Party Plaintiff,**

v.

**City of Mount Vernon and County of Westchester, Third–Party Defendants.**

**No. 00CIV3092(CM).**

United States District Court, S.D. New York.

April 5, 2002.

---

Barry R. Strutt, Keegan, Keegan & Strutt, LLP, White Plains, NY, for Plaintiff.

Joseph A. Maria, Joseph A. Maria P.C., White Plains, NY, for City of White Plains.

Jane Hogan Felix, Assistant County Attorney, Westchester County Attorney's Office, White Plains, NY, for Westchester County.

Louis J. Martino, Martino & Weiss, Mount Vernon, NY, for City of Mount Vernon.

DECISION ORDER AND OPINION DISMISSING CITY OF WHITE PLAINS' MOTION FOR SUMMARY JUDGMENT, GRANTING CITY OF MOUNT VERNON'S MOTION FOR SUMMARY JUDGMENT, GRANTING COUNTY OF WESTCHESTER'S MOTION FOR SUMMARY JUDGMENT, AND DENYING COUNTY OF WESTCHESTER'S MOTION FOR SANCTIONS

McMAHON, District Judge.

This is an action in diversity for personal injuries suffered by the Plaintiff, Scott Greges on October 10, 1999 when a stolen vehicle struck the vehicle in which he was traveling while on the Bronx River Parkway. In addition to plaintiff's own injuries, the driver of the stolen vehicle and plaintiff's mother and father were killed in this accident. Plaintiff alleges that City of White Plains police officers acted with reckless disregard in pursuing the stolen vehicle in violation of the restrictions provided in New York Vehicle and Traffic Law § 1104, as well as relevant departmental procedures.

Plaintiff initially filed his action against the City of Mount Vernon and the County of Westchester, in addition to the City of White Plains. In its Answer to plaintiff's Complaint, the City of White Plains alleged cross-claims against the County of Westchester and the City of Mount Vernon. Plaintiff withdrew his Complaint against the County and Mount Vernon on September 19, 2001. By Order of this Court White Plains converted its cross-claims against the City of Mount Vernon and the County of Westchester into a third party complaint against those parties. The third party Complaint essentially alleges that if the plaintiff sustained any damages as a result of any acts other than by the plaintiff's own acts, such damage was caused as a result of the acts of the third party defendants the City of Mount Vernon or the County of Westchester, and not by the acts of the third party plaintiff, the City of White Plains.

Defendant City of White Plains moves for summary judgment against plaintiff Scott Greges. Third party defendant County of Westchester moves for summary judgment against third-party plaintiff City of White Plains, and also moves for Rule 11 sanctions against counsel for the City of White Plains. Third party defendant City of Mount Vernon also moves for summary judgment against third-party plaintiff City of White Plains.

## FACTS PERTINENT TO THE MOTIONS

On October 10, 1999, at approximately 2:25 P.M., the operator of a stolen automobile, driving at an excessive rate of speed, crossed a double yellow line in the area of Virginia Road on the Bronx River Parkway in White Plains, New York, and struck an automobile being operated by plaintiff's father, Thomas Greges (now deceased), in which plaintiff was a passenger. It was raining at the time. Before the time of this accident, the police departments of three different jurisdictions—the City of Mount Vernon, the County of Westchester and the City of White Plains—were involved in the identification of the stolen vehicle, the location of the stolen vehicle and the alleged pursuit of

the stolen vehicle. Plaintiff maintains his action only against the City of White Plains and the City of White Plains maintains third party actions against the County of Westchester and the City of Mount Vernon. Since there are three separate summary judgment motions to consider, I will describe the involvement of each department separately.

### A. *The City of Mount Vernon*

On October 1, 1999, at approximately 1:50 P.M., City of Mount Vernon Police Officer Matthew Lombardo, while on-duty in a patrol truck, was advised by police radio of the theft of a Cadillac automobile occurring at South Third Avenue in the City of Mount Vernon. (Mt. Vernon Aff., ¶ 2; Lombardo Dep. 8). At that time, Police Officer Daniel J. Godschall was also in the police vehicle. (Mt. Vernon Aff. ¶ 2; Lombardo Dep. 6). Officers Lombardo and Godschall located and interviewed the victim, Virginia Powell. Ms. Powell told them that as she attempted to enter her car, she was approached from the rear by an unidentified black male who pushed her to the ground, took her keys and fled in her vehicle. Vernon Aff. ¶ 3.

Officer Lombardo transmitted the description of the vehicle and the fact that the vehicle was equipped with "Lojack," a vehicular locating device. *Id.* Officer Lombardo's police report of this incident indicated that he was advised by radio at approximately 2:50 P.M. that the stolen vehicle was involved in an accident on the Bronx River Parkway near the County Center and that the Scarsdale and White Plains police department were on the scene. Mt. Vernon Aff. ¶ 5, Ex. B. Officers Lombardo and Godschall did not leave the scene of the theft until after they received the radio report advising them of the car accident. (Vernon Aff. ¶ 6). Neither Mount Vernon police officer even entered their patrol truck until after the accident in question occurred.

### B. *The County of Westchester*

Sometime shortly after Officer Lombardo transmitted a report of the car theft, the County of Westchester broadcast the report of a stolen vehicle which was believed to have been traveling north on the Bronx River Parkway (the "BRP") in the area of Harney Road. (Westchester 56.1 ¶ 3). Officer Michael DeFlorio of the Westchester County Department of Public Safety ("WCDPS") had been driving an Emergency Truck (not an ordinary police car) and was parked in a maintenance garage on the Bronx River Parkway at the time of the radio transmission. *Id.* Officer DeFlorio observed a vehicle matching the description of the stolen vehicle and pulled onto the BRP behind the vehicle. *Id.;* DeFlorio Dep. 15. Officer DeFlorio radioed his dispatcher at the WCDPS, and told the dispatcher that he would attempt to stop the vehicle in the area of the County Center if he had additional police backup. The dispatcher advised Officer Florio that White Plains Police Officers would assist him as backup at the County Center in an attempt to apprehend the suspect. Westchester 56.1 ¶ 3; DeFlorio Dep. 22.

Officer DeFlorio testified that when he first observed the stolen vehicle he positioned himself behind the vehicle at about five car-lengths distance and followed the vehicle at the normal speed limit up to the County Center. DeFlorio Dep. 15—17. According to DeFlorio, as the stolen vehicle approached the traffic light on the BRP at the County Center, traffic was stopped by a red light. DeFlorio was stopped in such traffic somewhere behind the stolen vehicle. *Id.*

The White Plains Officers, whose actions will be discussed further below, had positioned their cars at the head of the

stopped traffic, blocking the northbound lanes of traffic on the BRP. Officer DeFlorio witnessed the suspect drive the vehicle onto the shoulder of the roadway and pass the roadblock. Officer Florio testified at deposition that he tried to maneuver his vehicle around traffic, but due to the dimensions of his Emergency Truck, he remained stuck in traffic and never saw the stolen vehicle again. Westchester 56.1 ¶ 13; DeFlorio Dep. 28—29.

Officer DeFlorio's Emergency Truck never passed the White Plains police vehicles. Westchester 56.1 ¶ 13; Rothman Dep. 24; Hogan Felix Decl. Ex. D. Further evidence that the County truck did not engage in any further pursuit of the stolen vehicle can be found in excerpts of the White Plains Police Departments radio dialogue following the failed roadblock at the County Center. There are four references to how the "County guy" got stuck in traffic at the roadblock, and never caught up with or passed any of the White Plains officers. Westchester 56.1 ¶ 16.

Sergeant Dennis D'Alessio of the Westchester County Police heard the transmission about the stolen Cadillac while at the Westchester County Police Headquarters (which is north of the County Center) as he was about to go off-duty. He knew that Officer DeFlorio had seen the vehicle and was nearby so he got back into his car and began traveling toward the BRP. D'Alessio Dep. 9–10. Sergeant D'Alessio was traveling southbound on the BRP with his lights and siren on when he saw the stolen vehicle pass him traveling northbound on the BRP at approximately 100 miles per hour. Id. at 13–14; White Plains 56.1 in Opposition to Westchester's Motion, ¶ 15. When Sergeant D'Alessio looked in his rearview mirror, he observed the suspect vehicle cross over into the southbound lane over a double yellow line and then heard an impact. Id. 16–17;

White Plains 56.1 in Opposition to Westchester's Motion, ¶ 15. At that time, Sergeant D'Alessio turned his car around and was the first officer at the scene of the accident.

## C. The City of White Plains

After County Officer DeFlorio requested assistance in stopping the stolen vehicle in the location of the County Center, White Plains Sergeant Brad Schneider was dispatched to the County Center. Sergeant Schneider was in White Plains "Car 1." White Plains 56.1 in Support of its Motion ¶ 5. Also dispatched were White Plains Police Officers Michael Garofalo and Barry Rothman, who were in "Car 14." Id. Upon arrival at the County Center, they observed Officer DeFlorio's truck stopped in traffic on the BRP with its lights, but not its siren, activated. Id.

There is conflicting testimony as to what occurred next. Defendant City of White Plains claims that Sergeant Schneider pulled his car in front of northbound traffic stopped at the red traffic light at the County Center. Id. at ¶ 6. Officers Garofalo and Rothman claim that they traveled down the southbound side of the BRP toward the rear of the stopped traffic in the opposite lane toward the County vehicle. Id. at ¶ 7.

Sergeant Schneider exited his vehicle, motioned traffic to stop and drew his weapon. Sergeant Schneider testified at his deposition that he drew his weapon with his right hand and kept it at his side and proceeded to the shoulder of the northbound lanes of the BRP. Schneider Dep. 22, 25. Defendant City of White Plains claims that this was not a roadblock. Id. at ¶ 8. Sergeant Schneider testified that the stolen vehicle came down the shoulder of the highway toward him at a high rate of speed, that he quickly backed out of the way to avoid being hit, the

stolen vehicle struck a parked vehicle and proceeded northbound on the BRP. *Id.* ¶ 9. Sergeant Schneider claims that by the time he got back to his vehicle, and Officers Garofalo and Rothman returned to their vehicles, they had lost sight of the stolen vehicle, and never observed the stolen vehicle again until they arrived at the accident scene. White Plains claims that the two cars traveled northbound at about 40 m.p.h., slowing down at each exit to check for the stolen vehicle. *Id.* ¶ 10.

Plaintiff's account of what transpired at and after the White Plains officers arrived at the County Center intersection differs from White Plains' account. Plaintiff alleges that after Sergeant Schneider exited his vehicle, the sergeant used the stopped car of Dr. Melissa Gottesman as a shield while he raised his gun high and pointed it over the front passenger side of Dr. Gottesman's car, with Dr. Gottesman still in the car, in the presence of pedestrians and other blocked and blockaded traffic, all in violation of the White Plains Police Department Roadblock Policy. Greges 56.1 ¶ 4 Ex. 4 (Gottesman Dep. 6–16) and Ex. 6 (White Plains Police Department Roadblock Policy). The Roadblock Policy does state, among other things, that the commandeering of vehicles during a roadblock should be discouraged as a "last resort," and that the commandeering officer shall ensure that the operator of a commandeered vehicle has been removed to a safe location, and that "no persons . . . shall be allowed to remain in any vehicle at a roadblock." Greges 56.1 Ex. 6.

As Sergeant Schneider had his raised gun held towards the northbound traffic on the BRP, the driver of the stolen vehicle went up on the shoulder of the road, scraped the side of Dr. Gottesman's car and proceeded northbound on the BRP. Dr. . Gottesman testified at deposition that after the stolen vehicle scraped the

side of her car, Officers Garofalo and Rothman were already in their car, and Sergeant Schneider immediately returned to his vehicle, and both cars pulled away into the northbound lanes of the BRP within four or five seconds. Gottesman Dep. 16. Donna Delfino, along with her passenger Steven Torres, was driving northbound on the BRP at that time. They both affirmed that the stolen vehicle passed Ms. Delfino's car traveling at about 90 m.p.h., swerving to the right and the left. Ms. Delfino stopped her car, and two to three seconds later saw two police cars chasing the vehicle at a very high rate of speed ("nearly as fast"), with their lights and sirens on. Greges 56.1 ¶ 8, Exs. 7 & 8. They saw no other police cars following the stolen vehicle. *Id.* The stolen vehicle crashed shortly afterwards.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348 . At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348, . Thus, summary judgment is proper where there is "little or no evidence . . . in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

## II. *City of White Plains' Motion for Summary Judgment is Denied*

New York State Vehicle and Traffic Law § 1104 permits the driver of an "authorized emergency vehicle," such as a police vehicle, to proceed past red traffic lights and stop signs, exceed the speed limit and disregard regulations regarding the direction of traffic, as long as certain safety precautions are observed. Vehicle and Traffic Law § 1104(b)(1)-(4); *Saarinen v. Kerr*, 84 N.Y.2d 494, 500, 620 N.Y.S.2d 297, 299, 644 N.E.2d 988, 990 (1994). The privileges of this statute are limited by section 1104(e), which provides that "[t]he foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." § 1104(e).

In its interpretation of the Vehicle and Traffic Law, the New York Court of Appeals has held that a "police officer's conduct in pursuing a suspected lawbreaker may not form the basis of civil liability to an injured bystander unless the officer acted in *reckless disregard* for the safety of others." *Saarinen*, 84 N.Y.2d at 501, 620 N.Y.S.2d 297, 644 N.E.2d 988 (emphasis added). This standard "requires evidence that 'the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow' and has done so with conscious indifference to the outcome". *Id.* (quoting Prosser and Keeton, Torts, § 34, at 213 (5th ed.)).

Viewing the evidence in the light most favorable to the plaintiff, under the circumstances presented, the City of White Plains' motion for summary judgment must be denied.

There are genuine issues of material fact as to whether City of White Plains police officers acted with reckless disregard for the safety of others when they became involved in the pursuit of the stolen vehicle along the BRP, as would allow the imposition of liability under § 1104, and whether any such recklessness was the proximate cause of the resulting accident. Although the White Plains officers claim that they never saw the suspect vehicle while in pursuit, and were going at or under the speed limit, disinterested witnesses claim that the officers were chasing the suspect vehicle at approximately 90 m.p.h. on the curvy BRP while it was raining heavily. The officers knew or should have known that the suspect was not armed, that the car was equipped with LoJack so that it could be located at a later time, and that the heavy rain and the dangerous curves of the BRP, in combina-

tion with the extremely high rates of speed they were traveling, made it "highly probable that harm would follow." *Saarinen,* 84 N.Y.2d at 501, 620 N.Y.S.2d 297, 644 N.E.2d 988. Furthermore, there are genuine issues of material fact as to whether the officers effected a roadblock at the County Center intersection and whether this roadblock threatened the safety of civilians and others in violation of the White Plains Police Department Roadblock Policy. According to the testimony of Dr. Melissa Gottesman, Sergeant Schneider raised his gun over the front of her car, while she was still inside her car and pedestrians were standing on the sidewalk, gave no warnings to her or to the pedestrians, and left her trapped between his car and that of Officers Rothman and Garofalo. If true, these actions may have violated departmental policy.

Accordingly, the City of White Plains has failed to meet its burden of demonstrating an absence of a genuine issue of material fact.

III. *County of Westchester's Motion for Summary Judgment is Granted and Its Motion for Sanctions is Denied*

■ The County of Westchester argues that it is entitled to summary judgment on the City of White Plains' third party action against is because there are no disputed issues of fact which would support the claim that the County acted with reckless disregard for the safety of others in engaging in a high speed chase of a stolen vehicle. The County argues that Officer DeFlorio initially followed the stolen vehicle at a normal rate of speed, remaining at all times a few cars behind the vehicle. The County further argues that DeFlorio stated that he would not initiate a stop of the vehicle without further backup, and that when the roadblock initiated by the City of White Plains officers failed, DeFlo-

rio got caught in traffic and could no longer engage in any pursuit of the stolen vehicle. Furthermore, County Sergeant D'Alessio never engaged in any active pursuit of the vehicle; rather he only saw the vehicle when it passed him while traveling in the opposite direction and then crashed.

The City of White Plains argues that there is a genuine issue of fact as to whether Officer DeFlorio remained in pursuit of the stolen vehicle along with the White Plains officers. White Plains argues that DeFlorio was right behind the White Plains' officers once they began traveling northbound on the BRP after the driver of the stolen vehicle passed the stopped cars along the shoulder. White Plains argues that, even though their officers did not act with "reckless disregard" for the safety of others, if their officers are found to have acted in such a way, then Officer DeFlorio is also culpable.

I find that there is no evidence sufficient to show that Officer DeFlorio acted in "reckless disregard" for the safety of others. There is no evidence that Officer DeFlorio failed to maintain a safe distance behind the stolen vehicle or that he drove erratically, or at a high rate of speed, or that he was in any way non-compliant with the law. He also did not participate in the alleged failed roadblock at the County Center intersection. Officer DeFlorio claims that he could not follow the stolen vehicle or the White Plains police officers after the vehicle got past the White Plains officers on the shoulder of the BRP because he was stuck in traffic. DeFlorio Dep 28–29. Dr. Gottesman saw the two White Plains officers pursue the stolen vehicle, but did not see the Westchester County emergency truck pass by her. Gottesman Dep. 18. Donna Delfino and Steve Torres saw only the two White Plains police vehicles follow a few seconds behind the stolen vehicle; they did not see

any other police vehicles pass them. Delfino Aff. ¶ 10; Torres Aff. ¶ 9. Furthermore, none of the White Plains officers can state that they ever saw Officer DeFlorio's truck traveling with them in pursuit of the stolen vehicle. *But see* Schneider Dep. 82–84 (Sergeant Schneider never saw the County truck after he left the County Center, although at one time during his search for the stolen vehicle he believed that he saw lights from "another vehicle" which *may* have been the County truck).

Plaintiff does not allege that any officer from Westchester County acted recklessly in pursuit of the stolen vehicle, and White Plains offers no evidence that Officer DeFlorio did so. And Sergeant D'Alessio, the County Police Officer involved in this incident, did nothing wrong; he was never in pursuit of the stolen vehicle, but rather was passed by the stolen vehicle as it traveled in the opposite direction and then crashed. Therefore, Westchester County's motion for summary judgment is granted.

■ Westchester County also moves for Rule 11 sanctions against counsel for the City of White Plains for asserting claims for improper purposes, for making claims and legal contentions that are not warranted by existing law and making allegations and other factual contentions which have no evidentiary support. This motion is denied. The Second Circuit has repeatedly warned that "sanctions must be imposed with caution." *MacDraw, Inc. v. CIT Group Equip Fin. Inc.*, 73 F.3d 1253, 1259 (2d Cir.1996); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994). Any doubts as to the reasonableness of an attorney's actions are to be resolved in favor of the attorney. *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir.1989). Although White Plains' third party action against the County of Westchester is now deemed meritless, I do not find that the actions of the White Plains attorney's deserve Rule 11 sanctions.

## IV. *City of Mount Vernon's Motion for Summary Judgment is Granted*

■ The City of Mount Vernon argues that there is no evidence that Mount Vernon police officers participated in any chase or pursuit of the stolen vehicle, and, in fact, remained at the scene where the car theft took place in the City of Mount Vernon, New York, until after the accident involving the stolen vehicle took place. Without any participation in the allegedly reckless pursuit, the City of Mount Vernon argues that the City of White Plains' third-party complaint against the City of Mount Vernon should be dismissed pursuant to Fed.R.Civ.P. 56. The City of White Plains failed to respond to the City of Mount Vernon's motion.

Federal Rule of Civil Procedure 56(e) sets out the burden placed on one who seeks to oppose a summary judgment motion and the consequences of failing to meet that burden. Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e).

Summary judgment is appropriate only when the moving party has met its burden of production under Rule 56(e) "to show initially the absence of any genuine issue concerning any material fact." *Ad-*

*ickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the evidence presented in support of the summary judgment motion does not meet this burden, " 'summary judgment must be denied even if no opposing evidentiary material is presented.' " *Id.* at 160, 90 S.Ct. 1598 (quoting Fed.R.Civ.P. 56 advisory committee notes to the 1963 amendments). "Thus, it is clear that even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If it has not, summary judgment is inappropriate, for '[n]o defense to an insufficient showing is required.' " *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir.2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. at 161, 90 S.Ct. 1598).

The City of Mount Vernon submitted an Affirmation by the City of Mount Vernon's Corporation Counsel and a Memorandum of Law in support of its motion for summary judgment against the City of White Plains. Attached to the factual affirmation was a transcript of the deposition of City of Mount Vernon Police Officer Matthew Lombardo, the officer who responded to the crime scene in Mount Vernon on October 10, 1999. These submissions meet the City of Mount Vernon's initial burden of showing the absence of any genuine issue concerning any material fact.

It is an undisputed fact that the police officers employed by the City of Mount Vernon did not participate in any pursuit of the stolen vehicle and, in fact, remained at the scene where the car theft took place in the City of Mount Vernon until after the accident involving the stolen vehicle occurred. Police Officers Matthew Lombar-

do and Daniel Godschall went to the location where the car had been stolen, and remained there until after the accident in question occurred. Absolutely no "reckless disregard" can be attributed to the actions of the Police Department of the City of Mount Vernon—there is no issue of fact for a jury to determine. Mount Vernon's motion for summary judgment is granted.

### CONCLUSION

For the reasons stated above, the City of White Plains' motion for summary judgment is DENIED; the County of Westchester's motion for summary judgment is GRANTED; the County of Westchester's motion for sanctions is DENIED; and the City of Mount Vernon's motion for summary judgment is GRANTED.