**AMETEX FABRICS, INC., Plaintiff,**

v.

**JUST IN MATERIALS, INC. and General Textile Printing and Processing Corp., Defendants–Third–Party–Plaintiffs–Appellants,**

v.

**AMERICAN FAST PRINT, LTD., Third–Party–Defendant–Appellee.**

Nos. 136, 137, Dockets 96–7396(L), 96–9536(CON).

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1997.

Decided March 17, 1998.

Robert J. Miller, Parker, Duryee, Rosoff & Haft, P.C., New York City (Jed R. Schlacter, Schlacter and Schlacter, New York City, on the brief) for Defendants–Third–Party–Plaintiffs–Appellants.

Brett J. Meyer, (Michael G. Goldberg, on the brief) Kreindler & Relkin, P.C., New York City, for Third–Party–Defendant–Appellee.

Before FEINBERG, WALKER, and CABRANES, Circuit Judges.

JOHN M. WALKER, *Circuit Judge:*

Third-party-plaintiffs-appellants Just In Materials, Inc. ("Materials") and General Textile Printing and Processing Corporation ("General Textile") appeal from the March 8, 1996 judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *District Judge* ), awarding summary judgment to third-party-defendant-appellee American Fast Print, Ltd. ("AFP") and dismissing third-party-plaintiffs-appellants' complaint alleging intentional and negligent misrepresentation, failure to disclose, and breach of contract claims under New York law. (No. 96–7396). Materials's attorney Jed R. Schlacter ("Schlacter"), Materials, and General Textile also appeal from the judgment of October 31, 1996 of the same court, imposing sanctions against Schlacter in the amount of $13,422 pursuant to 28 U.S.C. § 1927 and the district court's inherent powers, for Schlacter's alleged false representations to that court and for his refusal to concede that privity is a necessary element of the third-party cause of action. (No. 96–9536).

We vacate the judgment of March 8, 1996 and reverse the judgment of October 31, 1996.

*Factual Background*

Ametex Fabrics, Inc. ("Ametex") is a textile "converter" of decorative fabrics and the apparent copyright owner of a floral pattern ("the pattern") that is at the center of the present lawsuit. Textile converters purchase raw, uncolored textile goods, hire print plants such as AFP to print those goods with patterns or solid colors, and then sell the finished fabric to their customers. In and around May or June 1990, an AFP representative met with Roger Nemet ("Nemet") and Anne Erde ("Erde"), representatives of Just In Materials Designs, Ltd. ("Designs"), another textile converter, to discuss AFP's sale to Designs of fabric bearing the pattern. AFP claims to have informed Nemet and Erde at that meeting that Ametex owned the copyright in the pattern and that Designs could use and produce the pattern only with Ametex's permission. Nemet and Erde claim, however, that AFP represented that Designs could use the pattern for apparel without anyone's permission. In any event, Nemet and Erde, without Ametex's permission, engaged an AFP printing plant in September 1990 to print 14,000 yards of the pattern, which Designs then sold to its customers. AFP claims to have informed Designs a second time of the necessity of receiving Ametex's permission to use and produce fabric bearing the pattern. AFP then sent and Erde executed an agreement indemnifying AFP in the event Designs was sued for copyright infringement. Thereafter, AFP and Designs engaged in no further business relating to the pattern.

In April 1993, pursuant to an Asset Purchase Agreement ("Agreement"), Designs agreed to "sell, transfer, convey, assign and deliver" to Materials its "Purchased Assets," including under ¶ 1.1(a) "all of the Products in [Designs's] inventory" including the fabric bearing the pattern, under ¶ 1.1(c) "all trade names, trademarks, patents, copyrights and like proprietary items . . . owned by [Designs] or in which [Designs] has rights," under ¶ 1.1(g) "all licenses, franchises, processes, know-how, [and] trade secrets," and under ¶ 1.1(k) any "claim which [Designs] may have against any party, whether or not [Designs] has commenced a lawsuit with respect thereto, and prospective recovery by [Designs] from any such action, proceeding or claim." The Agreement contains an "As Is" clause

(¶ 2.20) that applies exclusively to Designs's inventory and various sales equipment (¶¶ 1.1(a) and 1.1(b)). In addition, ¶ 2.10 warrants the "good and marketable title to all of the Purchased Assets" enumerated above, "except as described" in the Agreement. Finally, the Agreement contains a general merger clause (¶ 8.13), providing that "[t]here are no restrictions, promises, warranties, covenants, or undertakings, other than those expressly set forth or referred to [in the Agreement]." Having obtained the pattern from Designs, Materials hired General Textile to print the pattern onto fabric, which Materials then sold to its customers.

### Prior Proceedings

On July 18, 1994, Ametex filed suit in federal court against Materials and General Textile (collectively, "third-party plaintiffs") for copyright infringement of the pattern. On September 15, 1994, third-party plaintiffs filed a third-party complaint against AFP for intentional and negligent misrepresentation, failure to disclose, and breach of the alleged contract between Designs and AFP transferring rights in the pattern. Defendants-third-party plaintiffs settled their case with plaintiff Ametex and, on November 29, 1994, the district court signed a "stipulated order of dismissal with prejudice" of Ametex's action, which left only the third-party complaint against AFP.

AFP then moved for summary judgment against third-party plaintiffs. AFP first asserted that no privity existed between Materials and AFP to maintain any of third-party plaintiffs' causes of action. Third-party plaintiffs responded with an affidavit of Michael Glick, Materials's President ("Glick"), which stated that the Designs–Materials Agreement in April 1993 assigned to Materials Designs's rights in the pattern under ¶ 1.1(c) and all of Designs's claims under ¶ 1.1(k). In its Memorandum of Law in Opposition to AFP's summary judgment motion, third-party plaintiffs noted that ¶ 1.1(c) of the Agreement assigned rights in the pattern, but focused primarily upon the ¶ 1.1(k) transfer of claims to overcome third-party plaintiffs' lack of privity with AFP. The district

court rejected third-party plaintiffs' ¶ 1.1(k) "claims" argument for lack of privity, on the basis that "Designs has never been sued by Ametex or anyone else for copyright infringement [of the pattern].... Since Designs has never been sued, it has not incurred any damages for which it might claim that AFP ... is responsible. Consequently Designs has no claim to assign to Materials." On October 5, 1995, the district court therefore granted AFP's motion for summary judgment and dismissed all four claims in the third-party complaint. The district court, however, never addressed third-party plaintiffs' "rights" argument under ¶ 1.1(c).

AFP also moved for summary judgment on the ground that AFP never represented to Designs that the pattern could be used without Ametex's permission. AFP supplied an affidavit of an AFP engraving manager to support this claim. In a hearing on October 5, 1995, the district court questioned the failure of Materials's counsel Schlacter to obtain affidavits to oppose this alternative ground for summary judgment. In response, Schlacter represented to the district court that Nemet and Erde had told Schlacter that AFP had permitted Designs to use the pattern without anyone else's permission. Pending submission of affidavits from Erde and Nemet, the district court declined to rule on the summary judgment motion on the basis of AFP's alleged representations to Designs. Nemet later submitted an affidavit asserting that AFP represented that Designs could use the pattern for apparel without permission, as a result of which AFP has apparently conceded and the district court properly acknowledged that there exists a genuine issue of material fact on this point.

On October 16, 1995, third-party plaintiffs moved for reconsideration of the district court's award of summary judgment, based on the "rights" argument under ¶ 1.1(c) of the Agreement. On February 9, 1996, the district court orally denied the motion for reconsideration in the belief that third-party plaintiffs had not raised the "rights" argument in opposition to the original summary judgment motion. The district court also ruled that, had it granted the motion for reconsideration, it would have denied the

"rights" argument on the merits because the Agreement's merger clause (¶ 8.13) precluded Materials from asserting any causes of action against AFP arising out of rights transferred by the Agreement. On March 8, 1996, the district court reduced to final judgment the award of summary judgment to AFP and the denial of third-party plaintiffs' motion for reconsideration.

AFP subsequently moved for sanctions against Schlacter for alleged abuse of discovery, bad-faith litigation, and refusal to concede that privity was a legal requirement of the third-party action. After a hearing on April 11 and 15, 1996, the district court issued an opinion sanctioning Schlacter under 28 U.S.C. § 1927 and the court's inherent powers (i) for falsely representing to the district court on October 5, 1995 the substance of alleged conversations between Schlacter and both Nemet and Erde, and (ii) for Schlacter's refusal to concede that privity was a necessary element of the third-party action. *See Ametex v. Just In Materials, Inc.,* 1996 WL 428391 (S.D.N.Y.1996). The district court declined, however, to sanction Schlacter for filing a third-party complaint against AFP in bad faith or for alleged discovery abuse. The district court subsequently set the amount of sanctions at $13,422 and on October 31, 1996, reduced this order to judgment.

Third-party plaintiffs appeal from the district court judgment of March 8, 1996 (Appeal No. 96–7396) and join with Schlacter in appealing the district court judgment of October 31, 1996. (Appeal No. 96–9536).

*Discussion*

I. *Jurisdiction to Hear this Appeal as Consolidated*

■ We first address whether the district court had supplemental jurisdiction, after settlement of the main copyright action between Ametex and third-party plaintiffs, to award summary judgment to AFP and to sanction Schlacter. Though this issue was not originally presented by the parties, we have the duty to determine *sua sponte* whether subject matter jurisdiction exists. *See Saint John Marine Co. v. United States,* 92 F.3d 39, 43 (2d Cir.1996).

On July 18, 1994, Ametex filed its complaint against third-party plaintiffs for alleged copyright infringement, for which the district court had federal question jurisdiction under 28 U.S.C. § 1338(a). On September 15, 1994, third-party plaintiffs filed its third-party complaint against AFP, properly predicating jurisdiction upon 28 U.S.C. § 1367(a), which provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.... Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

On November 29, 1994, the district court signed a "stipulated order of dismissal with prejudice" of Ametex's action against Materials, but did not dismiss the third-party action against AFP.

■ Under 28 U.S.C. § 1367(c)(3), district courts "*may* decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if the district court has dismissed all claims over which it has original jurisdiction." (emphasis added). "[T]he exercise of supplemental jurisdiction is left to the discretion of the district court, and this court's review is limited to whether the district court abused its discretion." *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994). We stated in *Purgess* that "the discretion implicit in the word 'may' ... permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants." *Id.* By the time of the settlement of the jurisdiction-conferring claim, third-party plaintiffs and AFP had already engaged in discovery under an expedited discovery schedule and held a settlement conference before a magistrate. Therefore, we cannot say that the district court abused its discretion in retaining supplemental jurisdiction over the third-party action. *See, e.g., Ackerman v. National Property Analysts, Inc.,* 887 F.Supp. 494, 510 (S.D.N.Y.1992)(retaining state claims after

12(b)(6) dismissal of federal claims); *Philan Ins. Ltd. v. Frank B. Hall & Co.*, 786 F.Supp. 345, 347–48 (S.D.N.Y.1992)(supplemental jurisdiction appropriate even where federal claims dismissed before trial).

## II. Appeal from the Grant of Summary Judgment (No. 96–7396)

### A. Timeliness of Appeal

■ AFP claims that third-party plaintiffs did not timely file their notice of appeal of the district court's award of summary judgment to AFP. On October 5, 1995, the district court issued a decision granting summary judgment to AFP. At some time thereafter, that court apparently stamped "Memo Endorsed" on AFP's notice of motion for summary judgment. We presume that this stamp, which does not appear in the joint appendix but which third-party plaintiffs concede does appear on the original notice of motion, is the alleged October 10, 1995 entry of summary judgment that AFP refers to in its briefs. *See* AFP Br. at 10 (No. 96–7396); Third–Party Plaintiffs Reply Br. at 4, n.2 (No. 96–7396). On October 17, 1995, third-party plaintiffs filed a motion for reconsideration. On March 8, 1996, the district court denied the motion for reconsideration, entered "judgment" for AFP, and dismissed the third-party complaint. On April 1, 1996, Materials appealed from "the judgment dated March 8, 1996."

AFP claims that Materials's failure to appeal from the purported October 10, 1995 award of summary judgment within thirty days of that judgment was a jurisdictional defect. We disagree. Fed. R.App. P. 4(a)(1) requires a notice of appeal to be filed "within 30 days after the date of entry of the judgment or order appealed from." A motion for reconsideration, however, tolls the 30–day period until after denial of the motion for reconsideration. *See Pfister v. Northern Illinois Finance Corp.*, 317 U.S. 144, 149, 63 S.Ct. 133, 137, 87 L.Ed. 146 (1942)(Upon "refusal to modify the original order ... the time [to appeal] is counted from the later order refusing to modify the original."). Thus, third-party plaintiffs' April 1, 1996 notice of appeal of "the judgment dated March 8, 1996" was timely.

■ AFP claims nevertheless that, even if third-party plaintiffs could have appealed from the alleged October 10, 1995 award of summary judgment, they improperly purported to appeal from the March 8, 1996 denial of the motion for reconsideration. *See Pfister*, 317 U.S. at 149, 63 S.Ct. at 137 ("A refusal to modify the original order ... requires the appeal to be from the original order."). We disagree. First, because the October 10, 1995 "Memo Endorsed" stamp of AFP's notice of motion did not satisfy Fed. R.Civ.P. 58, requiring "[e]very judgment [to] be set forth on a separate document," third-party plaintiffs could "elect to wait to file an appeal until a separate document containing the final judgment [was] entered" on March 8, 1996. 19 *Moore's Federal Practice*, § 202.04[1], (3d ed.1997). *See also Kolman v. Shalala*, 39 F.3d 173, 176 (7th Cir.1994); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1218 (9th Cir.1992); *United States v. Woods*, 885 F.2d 352, 353 (6th Cir. 1989)(per curiam). Even if the district court's stamp were a separate document, such that Materials's Notice of Appeal would have been more accurate to cite to it directly, this court would not be deprived of jurisdiction. While the requirements of Fed. R.App. P. 3(c), which *inter alia* directs that the Notice of Appeal "designate the judgment ... appealed from," are jurisdictional, *see Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–17, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988), this court liberally construes the designation requirement. *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 412–13 (2d Cir.1990); *cf. Torres*, 487 U.S. at 316–17, 108 S.Ct. at 2408–09 (reiterating preference for finding compliance through liberal construction of Fed. R.App. P. 3, 4). If (as here) "intent to appeal from a specific judgment can be fairly inferred," *Matarese v. LeFevre*, 801 F.2d 98, 105 (2d Cir.1986)(internal quotation marks and citation omitted), or even if it cannot be inferred but the appellee "has not been prejudiced" by the inaccuracy and (as here) has "responded in full" to the appellant's substantive arguments, this court has jurisdiction. *Krause v. Bennett*, 887 F.2d 362, 367 n. 2 (2d Cir.1989). Finally, the

district court's March 8, 1996 judgment *did* explicitly reference the award of summary judgment to AFP, making clear that third-party plaintiffs did appeal the correct judgment. In sum, the third-party plaintiffs' appeal was timely.

### B. *Issues Preserved on Appeal*

AFP claims that third-party plaintiffs have raised new issues on appeal relating to ¶¶ 1.1(a), 1.1(c), and 1.1(g) of the Agreement that were not raised in opposition to the original summary judgment motion. We disagree. While third-party plaintiffs may not have raised these claims before the district court with exemplary artfulness or precision, the claims were nevertheless raised. *See* Glick Affidavit in Opposition to Summary Judgment Motion at ¶¶ 4, 5, 6, and 8 (referencing ¶¶ 1.1(a), 1.1(c), and 1.1(g) of the Agreement and discussing whether and under what terms Designs transferred to Materials its "rights" or copyrights in floral patterns acquired from AFP); Memorandum of Law in Opposition to Summary Judgment Motion at 5–6 (focusing on third-party plaintiffs' "claims" argument under ¶ 1.1(k), but still referencing ¶¶ 1.1(a), 1.1(c), and 1.1(g)). Indeed, in denying the motion for reconsideration, the district court noted that third-party plaintiffs had raised the "rights" argument in opposition to AFP's summary judgment motion by "list[ing] the other portions of the ... agreement ... that is, sections 1.1(c) and (g)."

### C. *Standard of Review*

Summary judgment may be granted only if the moving party can show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party." *Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988). "Where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment [is] improper." *Id.* (internal quotation marks and citations omitted).

### D. *The Transfer of Rights to Materials*

The district court rejected Materials's intentional and negligent misrepresentation, failure to disclose, and breach of contract claims because under New York law they all required privity between Materials and AFP and because ¶ 1.1(k) of the Agreement assigning Designs's claims to Materials did not establish such privity. The district court, however, did not address Materials's ¶ 1.1(c) "rights" argument now properly before this court. Materials contends that, because ¶ 1.1(c) assigned Designs's rights in the pattern to Materials, Materials is in privity with AFP and may therefore assert claims against AFP arising out of those assigned rights. AFP concedes as a general matter that "assets and rights under a contract are assignable to third parties, which are not barred from commencing a breach of contract cause of action based upon a lack of privity." Indeed, it is elementary that

> [a]n assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged. Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor.

*Citibank, N.A. v. Tele/Resources, Inc.,* 724 F.2d 266, 269 (2d Cir.1983)(internal citations omitted). Though AFP disputed this point at earlier stages of the litigation, AFP now concedes that "the language of the Asset Purchase Agreement was unambiguous in simply transferring any rights which Designs may have had in the patterns to Materials." Paragraph 1.1(c) of the agreement, for example, transferred to Materials all "copyrights ... in which [Designs] has rights," rights which necessarily include Designs's right to print and use the pattern as per Designs's alleged agreement with AFP. AFP does not claim that Designs's right to use and produce the pattern was non-assignable. Therefore, barring any other defense by AFP, Materials may assert claims against AFP arising out of

AFP's alleged misrepresentations to Designs concerning Designs's rights in the pattern.

AFP argued successfully before the district court that, even if the Agreement assigned Designs's rights in the pattern to Materials, ¶ 8.13 of the Agreement precludes any claim Materials may have against AFP. Paragraph 8.13 is a boilerplate merger clause which provides that "[t]his Agreement ... embody [sic] the entire Agreement and understanding *of the parties hereto*" and that "[t]here are no restrictions, promises, warranties, covenants, or undertakings, other than those expressly set forth or referred to herein." (emphasis added).

It is unclear, however, whether ¶ 8.13 applies to the clauses assigning rights to Materials. For example, application of ¶ 8.13 to the entire Agreement appears to render superfluous ¶ 2.20, the "As Is" clause that applies to ¶¶ 1.1(a) and 1.1(b) but not to ¶ 1.1(c). Indeed, ¶ 2.20's exclusive application to ¶¶ 1.1(a) and 1.1(b) indicates that the transfer of rights under ¶ 1.1(c) was not "As Is," but rather contained covenants and warranties. Further, ¶ 2.10 warrants Designs's "good and marketable title ... except as described herein" to all "purchased assets," which under ¶ 1.1(c) include Designs's "rights" in the pattern. The phrase "except as described herein" could refer to the ¶ 2.20 "As Is" clause, which again does not apply to the ¶ 1.1(c) rights Materials now asserts. Finally, the ¶ 8.13 merger clause, which applies only to promises, warranties, and covenants not "expressly set forth or referred to" in the agreement, could be interpreted not to apply to ¶ 2.10, which as noted may warrant good and marketable title in the rights transferred to Materials under ¶ 1.1(c).

AFP's ¶ 8.13 argument, however, faces a more fundamental hurdle. Regardless of whether ¶ 8.13 applies specifically to Designs's assignment of rights under ¶ 1.1(c), ¶ 8.13 as a general matter excludes warranties only as between Materials *and Designs* ("the parties hereto") and not as between Materials and AFP. While ¶ 8.13 may preclude Materials from asserting claims against Designs arising from rights in the pattern transferred by the Agreement, the clause does not prevent Materials from asserting

Designs's rights in the pattern against third parties such as AFP. Plainly, if Ametex had sued Designs for breach of copyright in its patterns, Designs could assert claims against AFP arising from Designs's right to use and produce the pattern.

We conclude as a matter of law, therefore, that because Materials is Designs's assignee of rights in the pattern, the district court erred in granting summary judgment on the basis that lack of privity and the merger clause barred Materials from asserting its intentional and negligent misrepresentation, failure to disclose, and breach of contract claims against AFP arising from rights allegedly transferred from AFP to Designs. Of course, on remand the district court may still find that other legal theories under New York law bar Materials from asserting some or all of these causes of action against AFP, a matter as to which we express no opinion.

### E. Summary Judgment As To General Textile

General Textile was not a party to the Agreement between Designs and Materials, on the record before us has not been assigned any rights in the pattern, and therefore appears to have no basis upon which to sue AFP for breach of contract or any other claim. Because the district court held that the Agreement created no privity, that court did not reach the issue of whether a non-signatory to the Agreement such as General Textile could maintain any cause of action against AFP. AFP apparently did not raise this precise issue before the district court in its summary judgment motion. Nor, with the exception of a passing footnote, *see* AFP Br. at 7, n.6 (No. 96–7396), have the parties addressed the issue on appeal. While it appears that General Textile has no sustainable claim against AFP, the district court should be given the opportunity in the first instance to decide whether to grant summary judgment against General Textile on this or any other basis. We therefore vacate the award of summary judgment as against General Textile.

### III. Appeal from the Sanctions Order Against Schlacter (No. 96– 9536)

This court reviews for abuse of discretion a district court's award of sanctions

under its inherent powers and under Fed. R.Civ.P. 11. *See MacDraw, Inc. v. CIT Group Equipment Financing, Inc.,* 73 F.3d 1253, 1257 (2d Cir.1996). The district court abuses its discretion where its decision is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Id.*

## A. *False Representations to the District Court*

AFP moved for sanctions against Schlacter for alleged abuse of discovery, bad-faith litigation, and refusal to concede that privity was a legal requirement of the third-party action. After granting AFP summary judgment, the court on April 11 and 15, 1996 held a sanctions hearing in which Erde, Nemet, and Schlacter testified. The district court then sanctioned Schlacter for falsely representing to that court that Erde and Nemet told Schlacter that AFP had permitted Designs to use the pattern without Ametex's permission. The district court ultimately awarded AFP the costs related to that hearing.

■ (i) *Notice.* Schlacter claims that the district court failed to give him notice that he could be sanctioned, not only for filing the third-party action in bad faith, but also for falsely representing to the district court the substance of his conversations with Nemet and Erde. Had he been so informed, Schlacter maintains, he would have questioned Erde and Nemet in more detail and called other witnesses in his defense at the sanctions hearing.

The following are the only statements by the district court in the record that could conceivably have put Schlacter on notice before the hearing on April 11 and 15, 1996 that his allegedly false representations to that court were sanctionable. On October 5, 1995, the district court stated:

> Among the issues that I would like the parties to address is whether or not it is relevant that there was a good faith basis to believe that the representations that form the heart of this case were or were not made by American Fast Print. And besides the relevance of those representations to the filing of the third-party action,

> I need also to have the parties address whether or not it is relevant ... for me to take testimony from [Nemet and Erde] as to what their recollection of events was and potentially what their conversations with counsel were.

During a colloquy on October 19, 1995, the district court also stated that "[t]he issue is not as simple as what are the underlying merits of the action ... the issue is what did [Erde and Nemet] tell [Schlacter] at the point in time in which [Schlacter] undertook this lawsuit and at the point in time at which we litigated the underlying summary judgment motion."

■ "Like other sanctions, attorneys' fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Moreover, to "put counsel on notice as to the particular factors that he must address if he is to avoid sanctions ... a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed." *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96–97 (2d Cir.1997)(internal citation and quotation marks omitted). The above comments by the district court fall short of the "specific notice of the conduct alleged to be sanctionable" required by *Lapidus.* The issue of what Erde and Nemet told Schlacter when Schlacter instituted the third-party action is probative of whether Schlacter brought the third-party action in bad faith as well as whether Schlacter lied to the district court. Absent a statement from the district court explicitly informing Schlacter that it was considering sanctions against him for making false representations on October 5, 1995 to that court, Schlacter was entitled to assume that the court was considering sanctions only for the entirely separate act of filing the third-party action in bad faith.

■ (ii) *The Merits.* The inadequate notice to Schlacter notwithstanding, the district court abused its discretion in sanctioning Schlacter for falsely representing to that court that Erde and Nemet told Schlacter

that AFP had permitted Designs to use the pattern without anyone else's permission. In the April 11 and 15, 1996 sanctions hearing, Erde and Nemet both testified to the substance of what Schlacter had earlier represented to the court and for which he had been sanctioned, namely, that AFP had permitted Designs to use the pattern without anyone else's permission. This is powerful evidence that Schlacter did not lie to the district court when he claimed that Erde and Nemet had told the same thing to him. Erde and Nemet also testified that, though they had met with Schlacter on a number of occasions, they could not remember whether or not they had spoken with Schlacter specifically about the suit against AFP. Erde, however, had memory problems generally. She could not remember the substance of a conversation she had had with AFP's counsel or that she had even had a conversation with Materials's President Michael Glick, as claimed in a Glick affidavit. Significantly, Nemet and Erde never claimed not to have discussed AFP with Schlacter; rather, they simply could not remember any such conversations. It is true that Schlacter's time records of his conversations with Erde and Nemet mentioned "General Corporate" work for Designs, not the Ametex or AFP litigation. Nevertheless, upon this record, we hold that the district court had an insufficient basis to conclude from the evidence that Schlacter lied to the court and that the district court finding to that effect was clearly erroneous. We reverse the district court's sanction against Schlacter for allegedly lying to the district court. *See MacDraw,* 73 F.3d at 1257.

**B. *Briefing the Privity Issue***

 The district court also sanctioned Schlacter for AFP's attorneys' fees and costs in preparing two letters and a portion of AFP's brief relating to the privity argument upon which the court ultimately granted summary judgment against Materials. Pursuant to an instruction from the district court, AFP's counsel requested that Schlacter stipulate that privity was a necessary requirement of the third-party cause of action. AFP submitted as evidence of this "hornbook law" *County of Suffolk v. Long*

*Island Lighting Co.,* 728 F.2d 52, 63 (2d Cir.1984), which so holds. AFP explained that once this principle was agreed, it would then be able to focus its brief on "the effect of ... [the] Agreement on the privity requirement"—that is, on whether the Agreement assigning Designs's rights (¶ 1.1(c)) and claims (¶ 1.1(k)) to Materials operated to establish privity between Materials and AFP, so that Materials could maintain a breach of contract cause of action against AFP.

Schlacter responded by letter: "[W]e do not believe [the lack of] privity is a viable defense for you in this case, and we do not believe it is even an issue.... Consequently, we disagree with your position and with your purported understanding of the law." This letter formed the basis for the district court's award of AFP's fees and costs in briefing the principle that privity of contract is a prerequisite for an action for breach of contract.

Schlacter's letter, however, does not clearly indicate a bad faith refusal to concede a settled point of law. If Schlacter was predicting the efficacy of AFP's lack of privity argument, he was correct. In light of this court's opinion, lack of privity is "not a viable defense" because Materials, as the assignee of Designs's "rights" under ¶ 1.1(c) of the Agreement, stepped into Designs's privity with AFP and could pursue directly a breach of contract claim based on those rights. As AFP ultimately conceded, "assets and rights under a contract are assignable to third parties, who are not barred from commencing a breach of contract cause of action based upon lack of privity."

If, however, Schlacter was purporting to state an "understanding of the law" to the effect that privity was not required in order to pursue a breach of contract claim, he was in error. *See County of Suffolk,* 728 F.2d at 63. This is apparently how the district court read Schlacter's letter—as a refusal to concede the generic principle that breach of contract can only be asserted by a party in privity of contract. The district court may have failed to appreciate or credit the possible alternative reading above, both because Materials's articulation of the "rights" argu-

ment was imprecise, and because the court itself (erroneously, as we explained in Part II.D *supra*) disagreed with that argument. Nevertheless, sanctioning Schlacter for the consequences of a statement that may have been correct, or at least may have represented mere confusion as to the nature of the stipulation AFP was seeking and not bad faith obstructionism, constitutes an abuse of discretion. *See MacDraw*, 73 F.3d at 1257. We therefore also reverse this sanction against Schlacter.

### IV. *AFP's Request on Appeal for Further Sanctions*

AFP claims that Materials's appeal is frivolous and requests further sanctions against Schlacter in the amount of attorney's fees for the appeal and "double costs." In devoting approximately one-third of its written argument on appeal to its request for further sanctions, AFP accuses Schlacter of "abusive" and "deceptive tactics"; of advancing "nonsensical," "disingenuous," "inarticulate and incomprehensible" arguments on appeal; of "insult[ing] the intelligence of both counsel and the Court alike," "intentionally attempt[ing] to mislead the Second Circuit," and "insult[ing] the skill, expertise and morality of counsel for AFP." Without expressing an opinion as to Schlacter's general comportment before the district court, we believe Materials's arguments on appeal are neither frivolous nor insulting, but rather meritorious, and in many cases persuasive. We therefore reject AFP's request for further sanctions.

### Conclusion

For the reasons set forth above, the district court's award of summary judgment to AFP (No. 96–7396) is vacated and the district court's imposition of sanctions against Schlacter (No. 96–9536) is reversed.