**AIU NORTH AMERICA, INC. & American Home Assurance Co., Plaintiffs,**

v.

**CAISSE FRANCO NEERLANDAISE DE CAUTIONNEMENTS, Defendant.**

**No. 96 Civ. 5242(CBM).**

United States District Court, S.D. New York.

Oct. 28, 1999.

Haythe & Curley, Charles E. Dorkey III, New York, NY, for Plaintiffs.

Patterson, Belknap, Webb & Tyler LLP, Lisa E. Cleary, New York, NY, for Defendant.

*OPINION GRANTING PARTIAL SUMMARY JUDGMENT*

MOTLEY, District Judge.

### OPINION

Plaintiffs have charged defendant with fraud, aiding and abetting breach of fiduciary duty, and breach of contract. Defendant has moved for summary judgment on the breach of contract claims. For the reasons outlined below, the court now grants defendant's summary judgment motion as to plaintiffs' breach of contract claims.

### BACKGROUND

This case arises from bonds issued for the construction of a hydroelectric plant at Deadwood Creek in Yuba County, California. Electric Engineering Company (EEC), a subsidiary of Societe Commerciale Toutelectric (Toutelectric), served as the general contractor of the Deadwood Creek project. Defendant Caisse Franco Neerlandaise de Cautionnements (CFNC) is a French company engaged in the insurance business. Plaintiffs AIU North America, Inc. (AIU) and American Home

Assurance Company (AHA) are wholly owned subsidiaries of American International Group (plaintiffs are collectively referred to as AIG).

All parties agree that AIG and CFNC formed a contract to provide some manner of indemnification for potential losses related to the Deadwood Creek project. AIG contends the relevant contract between CFNC and AIG came about in the following manner. EEC and Toutelectric were clients of CFNC. EEC sought to obtain construction bonds to cover the Deadwood Creek project. CFNC could not issue such bonds itself since it was not licensed to issue bonds in the United States. In 1988 CFNC approached AIG to issue the necessary bonds for EEC. In October of 1988 AIG, allegedly fronting for CFNC, issued bonds for EEC to guarantee the construction of the Deadwood Creek project. CFNC contends that AIG issued the bonds not as a fronting agent but with reinsurance negotiated from CFNC. Undisputedly, the amount of these bonds initially totaled less than $2 million and was eventually increased to slightly over $2.5 million.

At the end of 1989 the owner of the Deadwood Creek project terminated EEC as the general contractor amidst allegations of default. Valley Engineers, Inc. replaced EEC as general contractor on the project and commenced a civil action in federal court within the Eastern District of California against EEC and AHA under the payment bonds. That suit, *Valley Engineers v. EEC,* was eventually resolved by settlement. AIU and AHA first sued CFNC in September of 1994, while the *Valley Engineers* litigation remained in progress. AIG's initial suit, filed in the Southern District of New York, sought to recoup from CFNC AIG's expenses and losses incurred under the Deadwood Creek project bonds. In July of 1995, after partial discovery, the parties settled that action for $476,159.84, with AIG retaining the right to seek additional money from

CFNC at the resolution of the *Valley Engineers* case.

The remainder of the *Valley Engineers* case did not go well for AIG. The California court found that AIG and AIG's counsel committed violations of discovery rules and imposed an outcome determinative sanction, striking all of AIG's defenses. AIG has consistently claimed that it had valid defenses to prevent any liability on the bonds. The imposition of this draconian sanction left AIG in an unenviable position, depriving AIG of any available defenses it might have employed to extricate itself from its predicament regarding Deadwood Creek. Following the imposition of this sanction, the *Valley Engineers* plaintiffs dismissed EEC from the suit. The California court allowed the case to proceed against AIG even after EEC, the principal on the performance bond, was dismissed. This left AIG the sole remaining defendant with liability established and punitive damages threatened, facing a trial purely to determine the extent of damages. Precluding a verdict, the parties negotiated a settlement for $15 million.

Following the $15 million settlement of the *Valley Engineers* case, AIG sought to exercise the right preserved by its earlier settlement with CFNC and attempt to recoup all of its losses from CFNC. Thus, AIG initiated this, the third law suit, arising from the Deadwood Creek project bonds. In the case presently before this court AIG now seeks to recover an amount in excess of $17.5 million from CFNC on the grounds of breach of contract. AIG arrives at this hefty sum based upon the $15 million *Valley Engineers* settlement and the costs incurred in defending that litigation.

## STANDARD FOR SUMMARY JUDGMENT

▉ This circuit recognizes the value of summary judgment to expeditiously dispose of meritless litigation. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). The mechanism of summary judgment pro-

motes judicial economy by preventing further litigation on an issue with an unalterably predetermined outcome. The standard for summary judgment ensures that issues are efficiently resolved without compromising the rights of the non-moving party.

Summary judgment may be granted only if the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 107 (2d Cir.1998) (internal citations omitted). Thus, the mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. A disputed fact is immaterial when the outcome of the case remains the same regardless of the disputed issue. For the purposes of the present motion, the parties disagree as to only one material fact, however no genuine question exists regarding that fact. All of the other factual questions which AIG contends are disputed prove immaterial and thus fail to preclude summary judgment. *See Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986) (noting that the existence of unresolved immaterial issues does not suffice to defeat a motion for summary judgment).

■ The sole disputed material fact involves how to characterize the nature of the $17.5 million which AIG seeks in damages. These damages represent AIG's $15 million settlement of *Valley Engineers* and related expenses. If this money represents compensatory damages arising from default on the construction bonds, then contractual interpretation would govern whether CFNC must reimburse AIG for these expenses. However, if this money represents damages arising from AIG's own misconduct then no interpretation of the contract can make CFNC responsible

for reimbursement. *See Home Insurance Co. v. American Home Products Corp.,* 902 F.2d 1111, 1113 (2d Cir.1990) (holding that requiring an insurer to reimburse an insured for punitive damages would violate New York state public policy); *See also Weissman v. First Unum Life Insurance Co.,* 44 F.Supp.2d 512, 520 (S.D.N.Y.1999) (noting well established public policy to invalidate promises to indemnify for losses arising from wrongful conduct). CFNC has presented evidence that this $17.5 million represents damages arising from AIG's misconduct and similar in nature to punitive damages. AIG has failed to present evidence to support an alternative interpretation. This court now determines that no reasonable fact finder could find otherwise than that the relevant $17.5 million arose from AIG's own misconduct. Since these damages represent losses incurred due to AIG's own misconduct, they are not the type of losses amenable to indemnification and the purported contractual ambiguities prove immaterial.

■■ AIG has no right to present to a fact finder its contention that the $17.5 million it seeks for breach of contract did not result from AIG's own misconduct in the *Valley Engineers* case. The only evidence AIG has offered is the fact that in the *Valley Engineers* settlement agreement AIG and the *Valley Engineers* plaintiffs agreed to label the $15 million compensatory. "The litigant opposing summary judgment, therefore, may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial. Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful". *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (internal citations omitted). A party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment". *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986). AIG's invitation for a fact finder to specu-

late that the $15 million Valley Engineers settlement reflected compensatory damages for construction default and not the sanctionable misconduct of the litigation is not sufficient to survive summary judgment.

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted). In answering this preliminary question this court deems AIG's contention to rest on no more stable foundation than a mere scintilla of evidence grounded only in conclusory allegations and speculation. In order to survive summary judgment AIG had to introduce some concrete evidence indicating that it would be possible for a reasonable fact finder to deem the damages AIG seeks as arising from something other than AIG's own misconduct. AIG has failed to meet this burden.

AIG has not developed the necessary level of evidence on this crucial issue. AIG simply rests on its contention that the parties to the *Valley Engineers* settlement chose to label the $15 million compensatory. AIG offers nothing further. AIG offers no indication of how it would attempt to convince a fact finder that $15 million

worth of damages arose from default on a $2.5 million bond, that AIG was legitimately liable for the $15 million in damages when it has always contended it had valid defenses to liability under the bond, or how such an imposition of liability could have occurred if not for the misconduct instigating the sanction of defense striking. The relevant standard requires AIG to present some evidence that summary judgment does not deprive it of an opportunity to present evidence with a possibility, even a slim possibility, of persuading a reasonable fact finder.

> The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present.

*Gibson v. American Broadcasting Companies*, 892 F.2d 1128, 1132 (2d Cir.1989).

## BREACH OF CONTRACT

■ The substantive law of contracts governs the determination of which facts are material and thus necessitate presentation to a fact finder. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As explained below, contract law determines that the remaining supposedly disputed facts are immaterial, and precludes plaintiffs from recovering under their breach of contract claim.

■ The court must decide, as a matter of law, whether significant contractual ambiguity exists and then interpretation of the ambiguous contract falls to the fact finder. *See Giles v. City of New York*, 41 F.Supp.2d 308, 318 (S.D.N.Y. 1999) (holding that just enough contractual ambiguity existed to allow introduction of

extrinsic evidence for the fact finder to consider in construing the contract). Ambiguity requires more than one reasonable interpretation of the contract. However, if neither interpretation would allow plaintiff to recover, divining the correct contractual interpretation remains a question of fact but an immaterial fact, and thus cannot salvage plaintiffs' breach of contract claim.

In its opposition to this motion for summary judgment AIG has argued that several material facts are in dispute. AIG contends that the parties disagree as to what documents comprise the contract, what risks CFNC agreed to bear, and whether the contract is properly characterized as fronting or reinsurance. Basically, AIG asserts that the parties "dispute the meaning of the key contractual term '100% reinsurance'". AIG Mem. of Law at 2. AIG argues that CFNC promised to "hold AIG 100% harmless for any and all liability that could arise from the issuance of the bonds". AIG Mem. of Law at 3. AIG claims CFNC promised to pay for all damages in any way related to the bonds and that CFNC should be forced to pay for all damages in any way related to the bonds. AIG mischaracterizes the key issue as follows, "this case has always been about a simple promise and the promisor's failure to uphold its end of the bargain". AIG Mem. of Law at 2. The salient point, however, is that not all promises are enforceable. The promise AIG seeks to enforce is inherently unenforceable as a matter of public policy. CFNC cannot be held liable for the damages AIG seeks because of the nature of these losses regardless of any promise to do so.

■ AIG seeks to argue that several components of the underlying contract between AIG and CFNC remain ambiguous. AIG's vigorous assertion that contractual ambiguity exists is not sufficient to bind this court to such a determination. A "mere assertion by one of the parties that a clause is ambiguous would not prevent summary judgment." *Garza v. Marine*

*Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988). However, for the purposes of this motion this court need not resolve the question of contractual ambiguity. If this court temporarily accepts plaintiffs' contention that contractual ambiguity exists and construes all these purported ambiguities in the manner requested by the plaintiff, all prove immaterial as recovery remains precluded by the relevant substantive law.

AIG seeks the opportunity to introduce evidence that the underlying contract between itself and CFNC should be characterized as a fronting agreement as opposed to a reinsurance agreement. The court now finds such distinction immaterial in this case. Temporarily accepting AIG's contention that the reinsurance industry recognizes a difference between fronting agreements and reinsurance agreements, and that fronting affords more extensive indemnification than reinsurance, the classification of this contract as fronting cannot salvage AIG's breach of contract claim. Again, contract law does not provide a remedy whenever a promise is broken and this court will not enforce promises which violate public policy. Thus, even if the insurance industry routinely employs fronting agreements in which one company purports to undertake all the losses potentially incurred by another party, this court must recognize that public policy prohibits parties from enjoying judicially enforced indemnification for certain types of losses. Thus even if CFNC made such an extensive promise, CFNC cannot be bound to honor that promise when AIG seeks indemnification for losses arising from its own misconduct. No reasonable fact finder could determine that the damages AIG now seeks did not arise from AIG's own wrongdoing. Thus, even accepting plaintiffs' proffered interpretation for all of the supposed contractual ambiguities, the burden of loss cannot be shifted from AIG.

■ CFNC needlessly argues that it would never have agreed to indemnify AIG for any and all losses sustained in any

matter relating to the Deadwood Creek project regardless of the manner by which such losses were incurred. CFNC's argument is unnecessary because, even if CFNC had made such a promise, in keeping with well established public policy, this court would not enforce that promise as to losses arising from AIG's own misconduct. "The public policy behind voiding any contract provision that indemnifies a wrongdoer from paying the price for his wrongful conduct is to avoid encouraging the wrongful conduct by removing the risk of loss." *Weissman v. First Unum Life Insurance Co.*, 44 F.Supp.2d 512, 520 (S.D.N.Y.1999). This public policy applies to all contracts be they regarding fronting, reinsurance, or olive oil import.

Contract law clearly prohibits allowing AIG to enforce an indemnification provision for losses arising from its own misconduct. AIG futilely dedicates much effort to alleging contractual ambiguities but thoroughly neglects the key element without which such ambiguities are immaterial. AIG has failed to introduce evidence to offer a reasonable possibility that the $15 million *Valley Engineers* settlement arose from some cause other than AIG's misconduct in that litigation. A previous order of this court prevents AIG from denying its own culpability for the discovery abuses which instigated the imposition of outcome determinative sanctions in *Valley Engineers*. The California court deemed AIG's conduct so egregious that it struck all of AIG's defenses and would have required AIG to proceed to verdict without the opportunity to present any substantive defenses. In light of the undisputed circumstances of the *Valley Engineers* settlement, no reasonable fact-finder could determine that the $15 million represented entirely compensatory damages arising only from the original bonds and not from AIG's misconduct in the *Valley Engineers* litigation. Thus this court will not allow plaintiffs in this case to attempt to mislead the fact finders with the clearly disingenuous contention that a payment of $15 million represented purely compensatory damages resulting from alleged default on a construction project guaranteed by a $2.54 million bond.

AIG's misconduct in the *Valley Engineers* case may prove quite fortuitous to CFNC because if AIG had conducted the case appropriately, it might still have incurred liability but of a nature which contract law might require CFNC to reimburse. However, in reality the $15 million settlement resulted from AIG's misconduct leading to the sanction of defense striking, and any contention otherwise requires too much speculation to form a basis for recovery. AIG has always claimed that it had valid defenses to prevent imposition of any liability on the Deadwood Creek project bonds. If AIG had appropriately conducted its defense in *Valley Engineers*, the California court would not have imposed sanctions and AIG would have had the opportunity to present these supposedly valid defenses at trial. Given AIG's consistent contention that its stricken defenses were valid, the California trial should have resulted in no award of damages against AIG. It remains entirely possible, however, that these defenses could have failed on their merits and that the *Valley Engineers* case could have concluded with an award requiring AIG to pay significant but purely compensatory damages. Such possible compensatory damages would be quantitatively and, more importantly qualitatively, distinct from the type of liability actually incurred by AIG. Such compensatory damages would be unlikely to approach anywhere near the magnitude of $15 million, but their compensatory nature could fall within the spectrum of damages which CFNC contracted to reinsure and for which AIG reserved the right to sue after the half million dollar settlement with CFNC. Similarly, while CFNC cannot be required to pay AIG's actual litigation costs from *Valley Engineers* in light of the sanctionable manner in which that litigation was conducted, the contract between CFNC and AIG might have required CFNC to indemnify for litigation expenses

properly incurred. However, this hypothetical outcome reflects merely what could have been and AIG has no right to present such speculations to the fact finder. In reality AIG did conduct its *Valley Engineers* defense improperly, the California court did impose outcome determinative sanctions, this did lead to AIG's incurring liability of $15 million by settlement and $2.5 million related costs, and this $17.5 million does represent a type of loss for which indemnity by CFNC will not be enforced by this court. While, there is no public policy to prevent a court from allowing CFNC to indirectly benefit from AIG's misconduct, there is public policy preventing a court from requiring CFNC to pay for AIG's misconduct.

CONCLUSION

In this claim for breach of contract the crucial issue is not the precise nature of the contract allegedly breached, but rather the nature of the damages sought. AIG's purported $17.5 million in damages arose from AIG's own wrongful conduct in the *Valley Engineers* litigation and no reasonable fact finder could determine otherwise. Thus, no reasonable interpretation of the contract between AIG and CFNC would allow the shifting of loss for these damages from AIG to CFNC. For the reasons outlined above the court now grants defendant's motion for summary judgment as to the breach of contract claim.

### *ORDER GRANTING PARTIAL SUMMARY JUDGMENT*

For the reasons outlined in the attached opinion, defendant's motion for summary judgment as to the breach of contract claims is granted.

SO ORDERED.