**ECHELON INTERNATIONAL
CORP., Plaintiff,**

v.

**AMERICA WEST AIRLINES,
INC., Defendant.**

**No. 99 Civ. 0425(CBM).**

United States District Court,
S.D. New York.

March 6, 2000.

**314**

Thelen Reid & Priest LLP, by Richard P. Swanson, Craig Weiner, New York City, for plaintiff.

Latham & Watkins, by Patricia Ball, Robert A. Greenspon, New York ·City, for defendant.

*OPINION*

MOTLEY, District Judge.

This case involves a contractual dispute regarding a rental agreement for a commercial aircraft. Plaintiff has moved for summary judgment. For the reasons outlined below, the court now grants partial summary judgment for plaintiff regarding the rent shortfall and denies summary judgment regarding the rent resetting costs and attorneys' fees.

## BACKGROUND

This case involves rental payments under a lease for a commercial aircraft. Defendant, America West Airlines ("America West") has been leasing a Boeing 757 aircraft from plaintiff, Echelon International Corp. ("Echelon") since 1989. In 1991 America West filed for bankruptcy. At that time Echelon and America West renegotiated the aircraft lease, lowering the basic rental rate from $400,000 to $315,000 per month. The terms of the renegotiation allowed this basic rental rate to be adjusted on three future rent reset dates to reflect the fair market value of such rental. The renegotiation set the following procedure for determining the fair market rental if the two parties could not agree: each party would select an appraiser to estimate the fair market rental; if the parties' appraisers could not agree the two appraisers would select a third independent appraiser; the determination of the third appraiser would govern.

As the rental reset date of March 10, 1998 approached, the parties could not agree upon a fair market rental rate. In keeping with the reset procedure, each party selected an appraiser to estimate the fair market rental. Echelon's appraiser, Morton Beyer, quoted a fair market rental rate of $395,000 per month. America West's appraiser, Avitas, quoted a monthly rental rate of $280,000. As provided in the renegotiation procedure if the parties' appraisers could not agree, a third appraiser was commissioned to determine the fair market rental. The two appraisers, by

mutual assent, selected a third independent appraiser, GRA Aviation specialists ("GRA"). GRA appraised the fair market rental at $354,000 per month. Thus, Echelon contends that the rent was properly reset to $354,000 per month.

Despite GRA's appraisal, America West has continued to pay only $315,000 per month. Plaintiff seeks to recover this rent shortfall of $39,000 per month (the difference between $354,000 and $315,000) as accruing since March of 1998.

Plaintiff also seeks to recover all fees and expenses incurred during the rent resetting process as well as its legal fees and expenses arising from this litigation. Echelon contends that the lease agreement required America West to shoulder all costs related to the rent resetting process and all legal fees from any resulting litigation.

## STANDARD FOR SUMMARY JUDGMENT

This circuit recognizes the value of summary judgment to expeditiously dispose of meritless litigation. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). The mechanism of summary judgment promotes judicial economy by preventing further litigation on an issue with an unalterably predetermined outcome. The standard for summary judgment ensures that issues are efficiently resolved without compromising the rights of the non-moving party.

> Summary judgment may be granted only if the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 107 (2d Cir.1998) (internal citations omitted). Thus, the mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. A disputed fact is immaterial when the outcome of the case remains the same regardless of the disputed issue. Factual questions which prove immaterial fail to preclude summary judgment. *See Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986) (noting that the existence of unresolved immaterial issues does not suffice to defeat a motion for summary judgment).

A party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment". *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986).

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

> The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present.

*Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir.1989).

## DISCUSSION

Plaintiff's motion for summary judgment seeks to establish defendant's liability for the rental shortfall, the expenses of rent resetting, and Echelon's litigation expenses in this action. Addressing Echelon's strongest claim first, the court now considers whether the existence of a rent shortfall can be settled by summary judgment. For the reasons outlined below, America West was bound to abide by the rent reset procedure to which it consented. GRA's appraisal yielded a reasonable determination of the fair market rental of the aircraft in adherence to the agreed rent resetting procedure. America West owes Echelon a rent shortfall amounting to the difference between GRA's appraisal and the rent which America West has been paying.

■ The parties disagree as to which circumstances would justify this court acting to second guess the appraisal method to which both parties agreed. Plaintiff asserts that a contractually specified independent appraisal is binding absent fraud. Defendant claims that an appraisal may be challenged not just for fraud but also for gross error or total irrationality. GRA's appraisal survives judicial scrutiny under any of these standards. Defendant has not challenged the neutrality or qualifications of appraiser GRA nor has defendant alleged fraud. Thus, if this court were to apply the standard proposed by plaintiff, GRA's appraisal is easily upheld on summary judgment. Plaintiff's proffered standard would require courts to exercise great feats of judicial restraint and resist the temptation to intervene to correct a grossly erroneous or totally irrational appraisal. Fortunately, this court's capacity for restraint is not tested in this matter as defendant's criticism of GRA's appraisal also falls far short of providing substantial evidence of gross error or total irrationality. Thus, if this court were to apply the standard proposed by defendant, the absence of supported allegations of gross error or irrationality, renders summary judgment appropriate as well.

GRA employed three seemingly reasonable methods of determining the fair market rental of the aircraft: GRA examined comparable transactions, GRA poled knowledgeable industry contacts, and GRA completed a return on investment analysis. GRA's appraisals by these three methods yielded monthly rental rates of $360,000 to $370,000, $330,000 to $360,000, and $351,000 to $357,000 respectively. Defendant's challenge to the method by which GRA estimated the fair market rental of the aircraft is weak. Defendant's main criticism is that GRA appraised the lease as if it were an operating lease rather than a leveraged lease. Defendant suggests that there is a clear cut distinction between leveraged and operating leases the lessor in a leveraged lease serves merely as a financier while the lessor of an operating lease has some involvement with the workings of the aircraft. Plaintiff contends that the line is somewhat more blurred and classification may vary depending on the context. Defendant further claims that leveraged leases generally command lower monthly rentals than operating leases and as such GRA's appraisal was too high. Defendant has failed to produce any substantial evidence to demonstrate any flaws in GRA's methodology let alone flaws dramatic enough to rise to the high level of incompetence necessary for gross error or total irrationality.

Defendant has made no credible showing that GRA's method of appraisal violated the terms of the lease. The parties explicitly provided for an independent appraiser to determine the fair market rental of the aircraft. The language of the rent reset provision employed a general definition of fair market rental which left ample discretion to the appraiser. The parties defined fair market rental as "the cash rental which would be paid for the rental period provided in the Lease in an arms-length transaction between an informed lessee under no compulsion to lease and an

informed lessor under no compulsion to lease". Bankruptcy Stipulation ¶ 3(b)(ii). Defendant argues that the above language clearly required GRA to treat the lease as a purely leveraged lease in its appraisal. The court's own reading of the above definition offers no such instruction to GRA. The bankruptcy stipulation does not require the appraiser to treat the lease as an operating lease or a leveraged lease. The stipulation is silent on this distinction, thereby leaving it to the discretion of the appraiser whether to consider the leveraged lease market, the operating lease market, or the entire aircraft lease market.

Defendant cannot show gross error here. This is not a case in which the appraiser demonstrated ignorance as to the intricacies of the aircraft lease market. GRA made an informed decision to consider the operating lease market in its appraisal, as had Avitas, America West's selected appraiser. Given GRA's well reasoned methodology in appraising the lease, the parties have not described a situation in which it would be necessary for the court to step in and substitute its own judgment for that of an expert in the field. The bargain struck between the parties sought to avoid such judicial intervention and the circumstances do not warrant depriving either party of the benefit of that bargain.

The remainder of plaintiff's motion for summary judgment seeks to impose upon defendant the entire cost of the rent reset process and Echelon's litigation expenses incurred in the present action. Plaintiff asserts that the lease agreement requires defendant to pay all litigation expenses and rent resetting expenses. In support of this claim, plaintiff cites the following general non-tax indemnity clause of the contract. "The Lessee hereby agrees to indemnify ... any and all liabilities ... including legal fees and expenses". Participation Agreement Section 7(b). Plaintiff bases its summary judgment motion on the argument that the parties' agreement constituted a net lease such that defendant would be required to cover all expenses, including unanticipated expenses.

The court must decide, as a matter of law, whether significant contractual ambiguity exists and then interpretation of the ambiguous contract falls to the fact finder. *See Giles v. City of New York,* 41 F.Supp.2d 308, 318 (S.D.N.Y.1999). Ambiguity requires the existence of more than one reasonable interpretation of the contract. Summary judgment could only be granted here if all reasonable interpretations would allow plaintiff to recover. As defendant has offered a contractual interpretation under which plaintiff might not recover these fees and costs, this issue cannot be resolved by summary judgment.

Defendant proffers the alternate interpretation that the parties never intended to require America West to pay all costs related to rent resetting procedures or Echelon's litigation expenses arising from disputes as to contract interpretation. Instead, America West contends the above quoted indemnity provision is a standard industry clause which customarily applies only to the costs of operating the aircraft and not to costs of enforcing the lease terms or resetting the rent. America West further argues that industry custom supports its proffered interpretation of the contract. Thus, America West has offered a possible legitimate interpretation of the contractual provision under which it would not be required to pay the rent reset costs or Echelon's attorneys' fees.

Echelon's proffered interpretation of this indemnity provision would require America West to pay Echelon's legal fees for all litigation arising from the lease. Such an interpretation would lead to the absurd scenario of requiring America West to pay Echelon's attorneys' fees even if Echelon filed a frivolous breach of contract claim against America West. It is inconceivable that America West would have agreed to such a provision. Similarly, the language of the indemnity provision does not conclusively show that America West consented to pay all the rent resetting

costs under all possible circumstances. Thus, no reasonable interpretation of the contract would require America West to pay all costs under all circumstances.

Although the indemnity clause does not unequivocally require America West to pay all fees and costs, it also does not preclude imposition of such burden in all circumstances. The indemnity clause might legitimately be interpreted to impose such fees and costs on America West in certain circumstances. One possible interpretation might be that America West agreed to pay Echelon's legal fees should Echelon be required to defend a frivolous or even a losing challenge to the lease. Another possible interpretation might be that America West did not consent to pay any of Echelon's legal fees arising from a dispute over the lease between Echelon and America West, but instead only for disputes between Echelon and a third party arising from operation of the aircraft. Similarly, the rent resetting costs might be imposed on either party depending upon which party acted more reasonably in refusing to accept the other's estimate of fair market rental. Evidence as to industry custom would be admissible in resolving these ambiguities. *See Giles v. City of New York*, 41 F .Supp.2d 308, 318 (S.D.N.Y.1999) (holding that just enough contractual ambiguity existed to allow introduction of extrinsic evidence for the fact finder to consider in construing the contract).

If two legitimate interpretations of the contract exist such that under one interpretation America West is obligated to pay the attorneys' fees and rent reset costs and under the other interpretation it is not, then this matter cannot be resolved by summary judgment. Two such contractual interpretations exist here. Thus, there is a genuine issue of material fact regarding America West's obligation to pay for the rent resetting process or for Echelon's litigation expenses in this matter and summary judgment is inappropriate regarding these aspects of Echelon's claim.

## AMOUNT OF DAMAGES FOR RENT SHORTFALL

The court finds the monthly rental rate was properly reset to $354,000 as per the terms of the parties' agreement. Since March of 1998 America West's monthly rental payments have been short $39,000. This rental shortfall was owing to Echelon as per the payment schedules set by the contract. As this case arises under diversity jurisdiction, New York law regarding pre-judgment interest calculation governs. America West owed Echelon an additional $39,000 in rent each month since March of 1998. As such, monthly compounded pre-judgment interest on these rent shortfalls shall be ordered pursuant to N.Y. CPLR § 5001 at the statutory rate of nine per percent per year.

## CONCLUSION

For the reasons outlined above the court now grants summary judgment as to the rent shortfall. America West will be ordered to pay damages in the amount of $39,000 per month for rent shortfall with interest accruing at nine percent annually from the date each payment was due. The court finds that contractual ambiguity as to the indemnity provision of the lease precludes summary judgment regarding attorneys' fees and costs for the rent reset process.

### *ORDER GRANTING PARTIAL SUMMARY JUDGMENT*

For the reasons outlined in the opinion filed simultaneously herewith plaintiff's motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's motion for summary judgment as to the rent shortfall is GRANTED. Plaintiff's motion for summary judgment as to attorneys' fees and costs for the rent resetting process is DENIED.

Defendant is ordered to pay a rent shortfall in the amount of $39,000 per month as accruing since March of 1998. Defendant is ordered to pay interest on this rent shortfall in the amount of nine

percent per year to be compounded monthly.

**SO ORDERED.**